Argued November 13, 1968, reversed and remanded October 22,
. petition for rehearing denied December 16, 1969

FERGUSON, *Appellant, v.* BIRMINGHAM
FIRE INSURANCE COMPANY,
*Respondent.*
460 P. 2d 342

*Donald H. Pearlman,* Portland, argued the cause for appellant. With him on the briefs were Keane, Haessler, Bauman and Harper, and David W. Harper, Portland.

*David N. Hobson,* Portland, argued the cause for respondent. With him on the brief were Phillips, Coughlin, Buell & Phillips, and Jarvis B. Black, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, DENECKE, HOLMAN and LANGTRY,* Justices.

O'CONNELL, J.

This is an appeal from a judgment dismissing the complaint of Helen L. Ferguson, executrix of the estate of Thomas E. Ferguson in which she sought damages under an insurance policy issued by defendant Birmingham Fire Insurance Company.

The parties filed an agreed narrative statement of the proceedings pursuant to ORS 19.088.

Mr. Ferguson purchased from defendant company a policy insuring him in the following terms (among others):

"Coverage L—Personal Liability: [Insurer agrees] To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

The following exclusions are recited with reference to Coverage L:

"This endorsement does not apply: * * *

"(c) * * * to bodily injury or property damage caused intentionally by or at the direction of the insured.

"* * * * *

---

* Langtry, J., did not participate in this decision.

"(g) * * * to property damage to property used by, rented to or in the care, custody or control of the insured or property as to which insured for any purpose is exercising physical control."

Mr. Ferguson died February 14, 1962. Kenneth W. Guenther and Marva Guenther filed a claim against his estate, contending that about September 1, 1961, Mr. Ferguson had cut four trees on their property. The evidence showed that Mr. Ferguson had employed a laborer to clean brush off the back of his lot. The line separating his lot from the Guenther's adjoining land was unmarked. The laborer cleared beyond the line and in doing so cut down the trees. Ferguson did not exercise any direct control over the workman and did not know that a trespass was being committed. Mrs. Ferguson, as executrix, rejected the claim and notified the Birmingham Fire Insurance Company that the claim had been asserted. In June, 1962, the company informed Mrs. Ferguson that it would not extend coverage under the policy, reciting the two exclusions quoted above, along with others, as the basis for its refusal.

The Guenthers filed a complaint against the estate. Mrs. Ferguson requested that 'the company defend the action. The company denied that the claim was covered under the policy, but offered to defend on the understanding that its defending and conducting settlement negotiations would not have the effect of waiving its right to deny liability under the policy. Mrs. Ferguson answered that she would not accept the company's offer to defend under a reservation-of-rights agreement. Her response was "We will expect you to defend under the terms of the policy with no reservations." After renewing her demand that the company defend, she defended at her own expense

and won an involuntary nonsuit at the close of the Guenther case.

The Guenthers again filed the same complaint. Mrs. Ferguson again demanded that the company defend her and the company responded as it had in the first action. The cause went to trial in February, 1965 and the jury returned a verdict for the Guenthers. The jury found that actual damage caused by the trespass was $1,000. In answer to a special interrogatory, the jury found that the trespass was not committed "willfully and intentionally." The judgment was for $2,189, representing double damages as provided for in ORS 105.815, and costs. Mrs. Ferguson paid the judgment.

Mrs. Ferguson demanded that the insurance company pay (1) the costs of her defense in the first action ($1,578.10), (2) the cost of her defense in the second action ($1,272.50), and (3) the judgment recovered against the estate ($2,189). The company refused to pay whereupon Mrs. Ferguson brought this action to recover the above amounts plus interest and attorney fees. The case was tried on a stipulated statement of facts.

The trial court dismissed plaintiff's complaint on the ground that the insurance contract did not cover the Guenther actions. This ruling was made upon the ground that plaintiff's employee was exercising physical control over the property damaged and therefore the case fell within the clause of the policy excluding "property damage to * * * property as to which insured for any purpose is exercising physical control."

The trial court felt that the present case was con-

trolled by *Crist v. Potomac Insurance Co.*, 243 Or 254, 263, 413 P2d 407 (1966). In that case the insured hired Roberts, the owner of a shovel loader, to load and deck logs at the site of the insured's logging operations. Insured's employee operated the loader without Roberts' consent and damaged it. We held that the insured, through his employee, exercised physical control over the loader within the meaning of the policy exclusion and that it was "of no consequence that the insured acted without the consent of the owner of the property."[1]

In the present case, as in *Crist,* the damage to the property arose out of a trespassory invasion by the insured. It is argued, however, that the conduct of Ferguson's employee did not amount to possession or control of the land but merely the infliction of an injury upon it. To appraise this argument it is necessary to consider the purpose which the exclusion clause was intended to serve.

The reason for adopting this type of exclusion clause is not entirely clear. The first part of the clause excluding coverage as to damage to property in the "care, custody or control of the insured" has long been a standard part of the general liability

---

[1] The court quoted from P & M Stone Co. v. Hartford Accident & Indemnity Co., 251 Iowa 243, 249, 100 NW2d 28, 31 (1959):

"The operation or attempted operation of a bulldozer is a physical act or acts and one who takes bodily possession of such machine and operates or attempts to operate it is exercising physical control over it.

"The provision of the exclusion clause that such physical control may be exercised 'for any purpose' expressly negatives any limitation in such exercise, and neither this nor any other language in this part of the exclusion clause connotes that the exercise of such physical control must be based upon the legal right to so act or that it is otherwise limited."

policy.[2] One purpose of this clause was to avoid the "adverse selection of risks." Those buying insurance often seek coverage for certain types of losses common to their particular enterprise. The underwriters felt that the premium of a general liability policy should not be burdened with these special risks; separate policies with appropriate premiums for the risks involved are available.[3] Another reason given for the "care, custody and control" provision is the "moral hazard" involved when property which has been entrusted to the insured's care, custody or control is injured; the insured "feels morally responsible for any damage caused by him and is more interested in seeing the owner is generously compensated by his company."[4]

In the interpretation of the "care, custody and control" provision as it originally appeared in standard policies the courts held that if the insured did not have *complete* dominion and the *legal right* to control the damaged property the exclusion clause would not apply. To avoid this interpretation the insurers added the clause "or property as to which the insured for any purpose is exercising physical control."[5] Although the latter clause is interpreted as extending the ex-

---

[2] See 7A Appleman, Insurance Law and Practice, § 4493.4 (1942); Anno: Scope of clause excluding from contractor's or similar liability policy damage to property in care, custody, or control of insured, 62 ALR2d 1242 (1958); Cooke, Care, Custody or Control Exclusions, 1959 Ins L J 7; Gowan, Provisions of Automobile and Liability Insurance Contracts, 30 Ins Coun J 96 (Jan. 1963); Levit, Care, Custody and Control: What It Is and What To Do About It, 1957 Ins L J 727; Ramsey, The Care, Custody, Control Exclusion of Liability Insurance Policies, 25 Ins Coun J 288 (July 1958).

[3] Gowan, Provisions of Automobile and Liability Insurance Contracts, 30 Ins Coun J 96 (Jan. 1963).

[4] Gowan, *supra* note 3, at 103.

[5] Gowan, *supra* note 3, at 104.

clusion to cases in which the insured's possession is wrongful, it is still necessary to show that the insured was "exercising physical control" before the clause is operative.

There remains, however, the crucial question: What kind of control is contemplated under this clause? The answer is not to be found in an abstract analysis of the word "control." We must turn to the reasons for the adoption of the exclusion clause and determine whether in light of those reasons the policy was intended to exclude coverage in the circumstances of the particular case. We have mentioned the "moral hazard" as one of the factors considered in adopting the exclusion clause. That factor would not be present in the case at bar because Ferguson did not take charge of Guenthers' property under circumstances which would generate a feeling of moral responsibility to reimburse him for damage caused to it. It has been observed that one of the purposes in the adoption of the exclusion clause in a general liability policy was to eliminate from coverage the ordinary business risk of damaging property, whether owned by the insured or others, which was used or otherwise involved as a usual incident of carrying on the insured's business.[9] Thus the holding in *Crist* that the damage fell within the exclusion clause can be explained on the ground that the shovel loader was a piece of equipment ordinarily used in carrying on a logging operation. The damage to Guenthers' property did not arise out of any business activity carried on by Ferguson; he was simply attempting to clear the brush off the back of his lot.

[9] Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc., 66 N J Super 478, 169 A2d 509 (1961); Cooke, Care, Custody or Control Exclusions, 1959 Ins L J 7; Gowan, Provisions of Automobile and Liability Insurance Contracts, 30 Ins Coun J 96 (Jan. 1963).

■ But the exclusion clause is in broad terms and does not by its terms, at least, purport to exclude business risks only. Can we say, then, that Ferguson's non-business activity in clearing the brush on Guenthers' land constituted an exercise of control over the property within the meaning of the policy. We think not.

■■ We interpret the phrase "property as to which the insured for any purpose is exercising physical control" to mean property over which the insured assumes control, knowing that it belongs to another. Where the insured knowingly assumes control over another person's property, either with or without permission, there are reasons for excluding coverage.[*] But we are unable to think of any valid reason for excluding coverage where the insured, while engaged in a non-business activity, unwittingly exercises control over another person's property and in the course of doing so damages it.

If our interpretation of the exclusion clause does not comport with the purpose which defendant insurance company intended it to serve, then we would say only that our reading of the clause was made possible by the defendant's employment of ambiguous language in drafting its policy.

■■ Defendant, relying upon *Isenhart v. General Casualty Co.*, 233 Or 49, 377 P2d 26 (1962), contends that it had no duty to defend the two Guenther suits. *Isenhart* establishes the rule that the obligation of the insurer to defend is to be determined by the allegations of the complaint filed against the insured. The insurer's knowledge of facts not alleged in the complaint is irrelevant in determining the existence of the duty to defend and consequently the insurer need not specu-

---

[*] For example, see Cooke, Care, Custody and Control Exclusions, 1959 Ins L J 7 at 9.

late as to what the "actual facts" of the alleged occurrence may be.[8]

Defendant claims that there was no duty to defend because the complaint alleged that Ferguson "without the consent or permission of the plaintiffs, and without any legal authority whatsoever, willfully, intentionally, and unlawfully trespassed upon said premises" and that "by virtue of the provisions of Section 105.810 ORS [providing for damages in the case of willful trespass] plaintiffs are entitled to recover triple the amount of damages * * *."

■ If Guenthers' recovery under this complaint were limited to damages arising out of the willful conduct of Ferguson, the policy clearly would not cover the loss and, applying the principle laid down in *Isenhart v. General Casualty Co., supra*, defendant would not have a duty to defend. However, the fact that the complaint charges the insured with conduct falling under the exclusion clause of the policy does not necessarily mean that the insurer will not have a duty to defend. A complaint may charge the insured not only with misconduct excluded under the policy, but also with conduct which is covered by the policy. Thus, if a complaint contains two counts, one based upon willful conduct and one based upon negligent conduct, the insurer would have a duty to defend because of the allegation falling within policy coverage.

■ Similarly, the duty to defend will also arise un-

---

[8] In our previous cases we have deemed it significant that the insurance contract obligates the company to defend any suit against the insured *alleging* the injuries covered by the policy. See e.g., City of Burns v. Northwestern Mutual Ins. Co., 248 Or 364, 434 P2d 465 (1967); McKee v. Allstate Ins. Co., 246 Or 517, 426 P2d 456 (1967). See also Harbin v. Assurance Co. of America, 308 F2d 748 (10th Cir 1962); Wilson v. Maryland Casualty Co., 377 Pa 588, 105 A2d 304 (1954); Note, The Duty of an Insurer to Defend its Insured, 5 Willamette L J 321 (1969).

der some circumstances when the the complaint contains only one count which, on its face, falls within a policy exclusion. If the complaint, without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend. For example, in an action of trespass brought against the insured, if the complaint alleges a willful entry (in order to support a claim for punitive damages), the plaintiff could, without amending the complaint, recover ordinary damages for a non-willful entry. The insurer, therefore, would have the duty to defend. The innocent trespass may be treated as a "lesser included offense" by analogy to the criminal law.

■ The present case falls within this principle. Although the Guenther complaint alleged a willful trespass (to bring the intrusion within ORS 105.810 permitting the recovery of treble damages), the Guenthers, without amending the complaint, were entitled to recover double damages under ORS 105.815 for a non-willful trespass. When the complaint in the action was tendered to defendant insurer it was put on notice of the possibility of liabiilty being imposed upon their insured for conduct covered by the policy. The defendant therefore had a duty to defend.

The foregoing analysis of the insurer's duty to defend requires us to amend what we said on this subject in *City of Burns v. Northwestern Mutual Ins. Co.*, 248 Or 364, 434 P2d 465 (1967). In that case the city sought to recover under a liability insurance policy issued to it by the defendant insurance company. The city had paid a judgment in an action brought by Mrs. Hovis, a widow, to recover damages for emotional injury when, without her authorization, the city moved the body of her deceased husband from

one grave to another. In the action brought by her the complaint alleged that the disinterment "was done willfully, wantonly and maliciously," and therefore entitled "plaintiff to punitive damages in the sum of $10,000." The city tendered to the insurance company the defense of the action which the company refused on the ground that the alleged injury was excluded from coverage under its policy. We said, "[t]he complaint upon which the Hovis case went to trial stated a cause of action for intentional harm and therefore alleged an excluded injury and not one within the policy coverage. The complaint alleged the removal of the body was malicious. This is an allegation that it was done with the intent to harm. Therefore, there was no duty upon defendant to defend Mrs. Hovis's claim against plaintiff at the trial court level." (248 Or at 367-68.) This conclusion was erroneous because the complaint, although alleging a malicious injury would, without amendment, permit a recovery for an unintended injury since it could be analogized to a "lesser included offense." Since the unintended injury fell within the policy coverage the insurer on that issue had a duty to defend.

Our clarification of the insurer's duty to defend does not, in any way, modify the rule laid down in *Isenhart*. In that case the complaint in the action against the insured alleged the commission of an assault and battery which was outside the coverage of the policy. The complaint, unless amended, would not permit recovery for an unintended harm.

In the present case, when plaintiff tendered to defendant the defense of the Guenther action defendant responded by asserting that the claim was not covered by the policy but offered to defend the action upon the understanding that by assuming the defense

defendant would not waive its right to later raise the question of coverage. Plaintiff replied, "We will expect you to defend under the terms of the policy with no reservations."

It is generally held that the insurer, when tendered the defense of an action, cannot, as a condition of its assumption of the defense, reserve the right to later question coverage. The insured must expressly or impliedly agree to such a reservation of rights.

If the insurer assumes the defense in the face of the insured's refusal to accede to insurer's request for reservation of rights, it is said that the insurer "waives" or is "estopped" to assert the defense of non-coverage.[⊙] And if the insurer, in order to avoid the loss of its right to question coverage, rejects the tender of the defense, it loses the benefits that accrue from being represented by its own counsel who ordinarily is experienced in the defense of such actions. And if it guesses wrong on the question of coverage, it will be required to pay the judgment and the costs of defense. Thus the insurer is forced to choose between two alternatives either of which exposes it to a possible detriment or loss.

What is the justification for imposing this dilemma upon the insurer? Where there is a conflict of interest between the insurer and insured and the judgment in the action against the insured can be relied upon as an estoppel by judgment in a subsequent action on the issue of coverage, the control of the action by the insurer could adversely affect the insured if the judgment was based upon conduct of the insured not falling within the coverage of the policy. Likewise, the insurer could be adversely affected by

---

[⊙] It would seem apparent that neither the elements of waiver or estoppel are present in these situations.

510

a judgment based upon conduct for which there is coverage. But we see no reason for applying the rule of estoppel by judgment in such cases. The judgment should operate as an estoppel only where the interests of the insurer and insured in defending the original action are identical—not where there is a conflict of interests.[10] If the judgment in the original action is not binding upon the insurer or insured in a subsequent action on the issue of coverage, there would be no conflict of interests between the insurer and the insured in the sense that the insurer could gain any advantage in the original action which would accrue

[10] "* * * The underlying purpose of the doctrine [of estoppel by judgment] is to obviate the delay and expense of two trials upon the same issue—one by the injured party against the indemnitee and the other by the indemnitee * * * against the indemnitor. This is possible because it is assumed that the interests of the parties to the contract of indemnity in opposing the injured person's claim are identical; and it is accomplished by giving the indemnitor an opportunity to appear in the first suit on behalf of the indemnitee so that everything that can be offered in exculpation of the indemnitee * * * may be presented. * * *

"It is, however, obvious that the binding effect of a judgment against the insured does not extend to matters outside the scope of the insurance contract, and that the Insurance Company is neither obligated to defend nor bound by the findings of the court if the claim against the insured is not covered by the policy. * * *

"In accord is Restatement of the Law of Judgments, Section 107(a), where the rights of indemnitee and indemnitor inter se after judgment against one of them are set out, and it is stated that if the third person has obtained a valid judgment against the indemnitee, both indemnitor and indemnitee are bound as to the existence and extent of the liability if the indemnitor has been given reasonable notice of the action and requested to defend; but in Comment (g) it is stated that this rule is binding only as to issues relevant to the proceeding; and that the judgment against the indemnitee does not decide issues as to the existence and extent of the duty to indemnify, and that in a subsequent action the indemnitor may show that the circumstances under which he was required to give indemnity do not exist." Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F2d 793, 799-800 (4th Cir 1949).

to it in a subsequent action in which coverage is in issue.[1]

It is argued that a conflict or divergence of interests may exist even though the insurer is free to set up the defense of non-coverage in a subsequent action. It is feared that if the insurer knows that it can later assert non-coverage, it may offer only a token defense in the action brought against the insured, or be less prone to effect a settlement advantageous to the insured.[2]

We think that this danger is minimal. The insurer knows that when it is the defendant in a lawsuit brought by one of its policy holders the jury's sympathy for the insured frequently produces a plaintiff verdict even when the insurer's case is strong. Knowing this, the insurer is not likely to relax its efforts in defending the action against the insured. If the insurer feels certain that it can successfully defend an action brought against it by the insured, it is not likely to accept the insured's tender of the defense in the first place.

■ We turn now to the disposition of the present case. Since the trial court erroneously held applicable the exclusion clause relating to the insured's control over the property which is damaged, the cause must be reversed and remanded. Defendant still has the right to raise the question of coverage based upon the clause of the policy excluding coverage for intentional conduct; defendant is not barred from raising this ques-

---

[1] "* * * If the [insurer] could not rely on the results of his conduct, there would be no reason for him to assert a defense contrary to the interest of the insured." Comment, Liability Insurer's Duty to Defend Suits for Intentional Injury, 24 Wash & Lee L Rev 271 at 282-283 (1967).

[2] Comment, Liability Insurance Policy Defenses and the Duty to Defend, 68 Harv L Rev 1436 at 1448 (1955).

tion of coverage as a consequence of its refusal to defend the Guenther actions.

■ Plaintiff's insistence that the defendant defend only if it waived the right to later litigate the question of coverage constituted an unreasonable condition to which the defendant had a right to respond by withdrawing from the case. It is true that by the terms of the policy defendant was obligated to defend, but the policy also reserves to the defendant the control over the litigation. The unreasonable condition imposed by plaintiff upon defendant constituted a breach of the contract as we now interpret it.

■ However, we do not feel that this breach on the part of plaintiff should exonerate defendant from liability if there is coverage. When plaintiff refused to permit defendant to defend the action and at the same time reserve its right to raise the question of coverage, plaintiff was acting in accordance with the rule adopted by most, if not all, courts. Our rejection of that rule and our holding that plaintiff breached his contract when he relied upon that rule should not prejudice plaintiff to any greater extent than is necessary in this case. We hold, therefore, that if on remand the question of coverage is resolved in favor of plaintiff, defendant will be liable for the amount of the judgment in the Guenther actions and the costs of defense.

The record indicates quite plainly that plaintiff trespassed on the Guenthers' land. It would appear, then, that if defendant had defended the action it is not likely that it would have fared any better than plaintiff did on the issue of liability. The only possible disadvantage defendant could have suffered would have been in not having an opportunity through its own counsel to attempt to obtain a verdict for an

amount of damages less than those the jury actually found in this case. But the chances that the damages could have been reduced were minimal. The character of the damage was such that it is not likely that defendant could have reduced the verdict by any significant amount.

Reversed and remanded.