Argued and submitted April 4, reversed and remanded with instructions
May 22, respondent's petition for reconsideration filed June 5, and resubmitted
In Banc August 12, allowed by opinion October 23, 1996
See 144 Or App 222, 925 P2d 1241 (1996)

# NORTHWEST PUMP & EQUIPMENT COMPANY,
a Washington corporation,
*Appellant,*

*v.*

# AMERICAN STATES INSURANCE COMPANY,
an Indiana corporation,
*Respondent.*

(941007023; CA A89666)

917 P2d 1025

Robert J. Miller, Sr., argued the cause for appellant. With him on the briefs were Brien F. Hildebrand and Moomaw, Miller & Hildebrand.

Thomas A. Gordon argued the cause for respondent. With him on the brief were Lin Harmon-Walker and Gordon & Polscer.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

This is an action by plaintiff against its liability insurer to recover the cost of defense and the amount it paid in settlement of a third-party claim. That claim alleged that plaintiff was liable for the environmental cleanup costs associated with gasoline discharged from an underground storage tank that was installed by plaintiff. On cross-motions for summary judgment, the trial court granted defendant's motion, denied plaintiff's and entered a judgment dismissing plaintiff's claim. We reverse and remand.

Weston operated an automobile dealership until 1987 on property he leased from Newell. In July 1979, plaintiff installed an underground storage tank (UST), piping and a gasoline pump on the property. Weston used the UST to store fuel for vehicles at the automobile dealership. A subsequent lessee removed the UST, and an inspection by the Oregon Department of Environmental Quality revealed soil and groundwater contamination in the area adjacent to where the UST had been. Newell brought an action against Weston, seeking damages and cleanup costs. Weston filed a third-party complaint against plaintiff. Defendant refused to defend plaintiff in that action and plaintiff retained other counsel. After incurring $18,715 in defense costs, plaintiff settled Weston's third-party claim for $10,000 before trial, without admitting liability.

After the settlement, plaintiff brought the present action, alleging that defendant had breached its duty to defend under its insurance policy with plaintiff "by wrongful refusal to investigate, defend or settle the claim." Plaintiff sought damages of $28,715. Plaintiff's complaint reiterated the allegations made by Newell against Weston and by Weston against plaintiff, and incorporated Newell's second amended complaint and Weston's third-party complaint. In relevant part, Newell alleged that:

"4.

"Between 1979-87, as a result of sudden and accidental (a) discharges of gasoline from the UST and connected piping, and (b) spillages of gasoline while dispensing to vehicles, which discharges and spillages were neither expected

nor intended, [Newell] suffered damage to soil and groundwater on his Property requiring remediation.

"* * * * *

"18.

"Weston breached that duty [to exercise reasonable care] by:

"(a) negligent installation of the UST, including improper placement of the tank or connection of piping, that failed to provide spill protection;

"(b) negligent failure to monitor and inspect the UST at reasonable intervals;

"(c) negligent failure to discover and take precautions against leaks;

"(d) negligent failure to recover leaking gasoline and to prevent the spread of contamination."

Weston's third-party complaint against plaintiff incorporated Newell's complaint and further alleged that the "only tank installed during [Weston's] occupancy of the premises was installed by [plaintiff]." If Weston is found liable to Newell, Weston sought "contribution for [plaintiff's] proportional share of the common liability" and "indemnity of Weston for expenses incurred."

The insurance policy issued to plaintiff by defendant provides coverage for property damage caused by

"an accident, including continuous or repeated exposure to conditions which result in * * * property damage which is neither expected nor intended from the standpoint of the insured."

However, the policy excludes coverage for

"property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but *this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*." (Emphasis supplied.)

The trial court concluded that in the third-party complaint "there are no specific facts that suggest sudden and accidental" and even viewing all the complaints together there is no suggestion that there was a

> "sudden valve release or other event that occurred, that tied [plaintiff] to this gradual—apparently gradual contamination of the property[,] and because of that, I think a fair reading of the complaints in total would allow the insurer to deny its obligation to defend[.]"

Accordingly, it granted defendant's motion for summary judgment and denied plaintiff's motion.

■    On appeal, plaintiff argues that the allegations in the complaints support the possibility that the contamination was the result of a "sudden and accidental" discharge of gasoline and that defendant therefore had a duty to defend plaintiff. Defendant denies such a duty, because Newell's complaint "alleged the legal conclusion that the discharge was 'sudden and accidental,' but the facts alleged do not support that conclusion," and because "no facts were stated in the underlying complaints which raised the potential of coverage." According to defendant, the facts alleged in Newell's complaint demonstrate only "a continuing release or series of releases 'between 1979 and 1987' from [the UST] and connected piping, and from spillages of gasoline while dispensing to vehicles."

In *Ledford v. Gutoski*, 319 Or 397, 399-400, 877 P2d 80 (1994), the Supreme Court reiterated the analytical approach for determining whether an insurer has a duty to defend:

> "Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. *Oakridge Comm. Ambulance v. U.S. Fidelity*, 278 Or 21, 24, 563 P2d 164 (1977). An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy. *Nielsen v. St. Paul Companies*, 283 Or 277, 280, 583 P2d 545 (1978); *Oakridge Comm. Ambulance v. U.S. Fidelity, supra*, 278 Or at 24; *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969).

"* * * * *

"The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage. *Nielsen v. St. Paul Companies, supra,* 283 Or at 280. Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. *Ferguson v. Birmingham Fire Ins., supra,* 254 Or at 506-07. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured. *Blohm et al v. Glen Falls Ins.,* 231 Or 410, 416, 373 P2d 412 (1962). We must determine whether the facts alleged in the [plaintiff's] complaint may reasonably be interpreted to include conduct within the coverage of the [insurer's] policy." (Emphasis in original.)

2.     Weston's third-party complaint sought to hold plaintiff liable to the extent that plaintiff's acts contributed to the damage to and contamination of Newell's property. Under the pleadings, plaintiff would incur liability toward Weston for plaintiff's tortious acts if and only if Weston were held liable to Newell. *See* ORCP 22 C (describing third-party impleader as mechanism to bring into an action a nonparty with potential liability to third-party plaintiff). Newell's complaint against Weston is therefore relevant in this action and must be examined to determine whether Weston's third-party complaint against plaintiff may reasonably be interpreted to include conduct covered by defendant's insurance policy. *Ledford,* 319 Or at 400. Newell's complaint contains two allegations that may reasonably implicate plaintiff: Paragraph 4 alleges "sudden and accidental [ ] discharges of gasoline from the UST and connected piping" between 1979 and 1987; paragraph 18 alleges improper installation of the UST or connection of piping. The allegations in paragraph 4 flow directly from the allegations contained in paragraph 18.

We confronted a similar situation in *North Pacific Ins. Co. v. Wilson's Distributing,* 138 Or App 166, 908 P2d 827 (1995). In that case, Coos-Curry Electric Co-Operative (C-CE) filed a complaint alleging that between 1955 and 1989 the Wilsons owned a gasoline station across the street from

C-CE's property and that in 1990 C-CE discovered contaminated soil and groundwater on its property and determined that it originated from spills, leaks or discharges from the Wilsons' gasoline station. *Id.* at 171. North Pacific had issued an insurance policy to the Wilsons that contained a "pollution exclusion" clause with a "sudden and accidental" exception identical to the one in the policy in this case, but it refused to defend the Wilsons in the underlying action brought by C-CE. We held that it was not necessary for the C-CE complaint to allege that any releases were sudden and accidental, because the allegations that were made were sufficient to allow admission of evidence that one or more releases was sudden and accidental, thus obligating North Pacific to defend. *Id.* at 171-72.

Here, Newell alleged that soil and groundwater contamination resulted from discharges and spills associated with Weston's use of the UST and that improper installation of the UST and piping connections were among the causes. Weston alleged that the only UST on the property, along with the pump and piping, were installed by plaintiff. That is sufficient to invoke defendant's duty to defend, because those allegations would allow for the admission of evidence that gasoline was released suddenly and accidentally on one or more occasions. *Mutual of Enumclaw Ins. Co. v. Gass*, 100 Or App 424, 427, 786 P2d 749, *rev den* 310 Or 70 (1990). Consequently, we need not decide whether the allegations in paragraph 4 are legal conclusions, as defendant argues, or are statements of ultimate fact, as plaintiff contends. Newell's complaint, even without the phrase "sudden and accidental," would be sufficient to allow proof of conduct covered by the policy. Therefore, the trial court erred in granting defendant's motion for summary judgment and in denying plaintiff's motion.

■ Plaintiff next argues that, because defendant breached its duty to defend, plaintiff is entitled to recover both the costs it incurred in defending against Weston's claims, including attorney fees, and the amount that it paid to Weston in settlement. Defendant does not appear to dispute plaintiff's right to recover reasonable defense costs, but it does dispute plaintiff's entitlement to the amount it paid in settlement, because "the duties to defend and indemnify are

separate and distinct; breach of the duty to defend does not automatically entitle [plaintiff] to indemnity as well."

When a contract for insurance is breached, the injured party is entitled to receive only what the party would have received if there had been no breach. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 646, 576 P2d 1244 (1978). Because the duty to defend is contractual and settlement is a component of defending, it follows that settlement is part of the performance of an insurance contract. *Georgetown Realty v. The Home Ins. Co.*, 102 Or App 611, 615, 796 P2d 651 (1990), *rev'd on other grounds* 313 Or 97, 831 P2d 7, *on remand* 113 Or App 641, 833 P2d 1333, *rev den* 316 Or 528 (1992). The duty to defend requires that the insurer, in order to protect its insured's interests as well as its own, act reasonably to negotiate and settle claims against the insured when possible. *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 519, 693 P2d 1296 (1985).

Where, as here, an insurer breaches its duty to defend, the insured must be given the same right to avoid the expense of trial and the risk of a costly judgment that the insurer would have had if it had not abrogated its duty to defend. When an insurer wrongfully refuses to defend its insured on a claim that could impose liability covered by the policy and the insured, acting in its own defense, reasonably settles the claim, the insurer is liable for the amount of the settlement.[1] *See Jaloff v. United Auto Indemnity Exch.*, 121 Or 187, 253 P 883 (1927) (insurer's wrongful refusal to defend is breach of contract that releases the insured from agreement not to settle without consent of insurer and waives condition that limits insurer's liability to judgments rendered against insured after trial); *see also* George J. Couch, 14 *Couch on Insurance 2d* §§ 51:58, 51:59 (Rev ed 1982 and 1995 Supp) (citing numerous federal and state cases holding insurer liable for amount reasonably paid in settlement); *Annot.*, 49 ALR2d 694, 717-20 (1956), 49-52 ALR2d Later

[1] We need not address whether and under what circumstances an insurer may be liable for a settlement amount in excess of the policy limits. *See generally* cases cited in George J. Couch, 14 *Couch on Insurance 2d* §§ 51:58, 51:59 (Rev ed 1982 and 1995 Supp).

Case Service 694-760 (1987 and 1995 Supp) (same); *cf. Timberline Equip.*, 281 Or at 645-46 (insurer liable for portion of settlement allocable to claims within policy coverage where complaint also included claims not within policy coverage).

Reversed and remanded with instructions to enter summary judgment for plaintiff and to determine plaintiff's reasonable defense costs and the reasonableness of the amount of settlement.