UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,

v.

STAR TECHNOLOGIES, INC., a Delaware corporation; Robert C. Compton; Herbert Shaw; Alan O. Maxwell; Ralph R. Shaw; Francis Jungers; Robert C. Mathis; Carl E. Ravin; Larry Ingwersen; and Ronald G. Walters, Defendants.

No. CV–95–1479–ST.

United States District Court, D. Oregon.

Aug. 16, 1996.

Douglas G. Houser, Bullivant Houser Bailey, Pendergrass & Hoffman, Portland, OR, for Plaintiff United States Fidelity & Guaranty Co.

Paul T. Fortino, Perkins Coie, Portland, OR, for Defendant Star Technologies Inc.

## OPINION AND ORDER

STEWART, United States Magistrate Judge:

### INTRODUCTION

Plaintiff United States Fidelity & Guaranty Company ("USF & G") brings this action against Star Technologies, Inc. ("Star Technologies") and its officers and directors seeking a declaratory judgment that it has no obligation under the parties' insurance policies to defend any of them in an action currently pending in the United States District Court for the Northern District of Ohio. There is complete diversity among the parties, and the amount in controversy exceeds $50,000.00, exclusive of interest and costs. Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 U.S.C. § 636(c).

Both sides have filed dispositive motions on the sole issue of whether the parties' insurance policies require USF & G to defend any of the defendants in the Ohio action. For the reasons set forth below, USF & G's motion for summary judgment (docket # 21) is granted, and defendants' cross-motion for summary judgment (docket # 29) is denied.

### UNDISPUTED FACTS

Star Technologies is a company which designs and manufactures high-performance scientific computers. Defendants Robert C. Compton, Herbert Shaw, Alan O. Maxwell, Ralph R. Shaw, Francis Jungers, Robert C. Mathis, Carl E. Ravin, and Larry Ingswersen are or were officers and directors of Star Technologies.[1] USF & G issued comprehensive general liability insurance policies to Star Technologies, which also provided coverage for the officers and directors as "additional insureds."

Under the 1984–85 and 1985–86 policies in effect during the relevant time period, USF & G has a duty to defend and indemnify Star Technologies and its officers and directors (collectively "Star defendants") for personal injury and advertising injury. "Advertising injury" is defined by the policies as:

> injury arising out of an offense committed during the policy period *occurring in the course of the named insured's advertising activities*, if such injury arises out of libel, slander, defamation, violation of privacy, *piracy*, unfair competition, or infringement of copyright, title or slogan.[2]

Policies, II(D), p. 9, attached as Exhibits A & B to Stipulated Facts for Summary Judgment (docket # 23) ("Stipulated Facts") (emphasis added).

From 1984 through 1985, Star Technologies developed, manufactured, and sold a high performance computer known as a reconstruction processor. The reconstruction processor is used in computer tomography (CT) scanners to produce medical images. One of the components of the reconstruction

---

1. USF & G also names Ronald Walters as a defendant, who is the plaintiff in the underlying Ohio action against Star Technologies and its officers and directors. However, Walters has made no appearance in this action and this court granted USF & G's motion for default against him on August 13, 1996 (docket # 49).

2. Although the 1984–85 policy has not been located in its entirety, it is believed to contain the same provision. For purposes of this motion, the court will assume that both policies contained the provision as quoted.

processor is a computer board known as a back projector, which improves the resolution of the CT scanner images. Defendant Ronald G. Walters ("Walters") established in prior litigation, *Sewall v. Walters,* 21 F.3d 411 (FedCir1994), that he is the sole inventor of the back projector. The patent for the back projector was issued to Walters in May 1995. Prior to that time, Star Technologies had sold and delivered 3,474 reconstruction processors incorporating Walters' back projector design. Only four processors were delivered after the patent was issued.

Walters has now filed suit against the Star defendants in the United States Court for the Northern District of Ohio ("Walters action"), seeking an injunction and damages for patent infringement, including direct infringement under 35 U.S.C. § 271(a), inducement to infringe under 35 U.S.C. § 271(b), and contributory infringement under 35 U.S.C. § 271(c) from September 1985 to date. The Star defendants tendered the defense of Walters' action to USF & G under the terms of the insurance policies. USF & G has informed the Star defendants that there is no coverage for the Walters action and that it declines to accept the defense.

### STANDARDS

■ FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir), *cert denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir1987). The court must view the inferences drawn from the facts in the light most favorable to the nonmoving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. However, when the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.,* 818 F.2d 1466, 1470 (9th Cir1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.* at 1468.

### DISCUSSION

### I. *General Principles of Construction*

■ The parties agree that Oregon law governs construction of the insurance policies. Under Oregon law, an insurer has a duty to defend an action against its insured if the complaint filed against the insured "could, without amendment, impose liability for conduct covered by the policy." *Ledford v. Gutoski,* 319 Or. 397, 399–400, 877 P.2d 80, 82 (1994). The court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery which could be covered by the policy. *Id.* If the complaint is unclear or ambiguous and may be reasonably interpreted to include an incident within the coverage of the policy, the insurer has a duty to defend. *Oakridge Community Ambulance Serv. Inc. v. United States Fidelity & Guar. Co.,* 278 Or. 21, 24, 563 P.2d 164, 166 (1977) (*en banc*). If the language of the policy is susceptible of more than one construction, it is construed in favor of the insured. *School Dist. No. 1, Multnomah County v. Mission Ins. Co.,* 58 Or.App. 692, 697, 650 P.2d 929, 933 (1982), *review denied,* 294 Or. 682, 662 P.2d 725 (1983) ("*Mission*"). The insurer is required to provide a defense where claims fall both within and outside coverage of the policy. *Fergu-*

*son v. Birmingham Fire Ins.*, 254 Or. 496, 507, 460 P.2d 342, 347 (1969).

## II. Does "Piracy" Include Patent Infringement?

█ The definition of "advertising injury" in the policies does not expressly include patent infringement or inducement to infringe in the list of covered torts. Thus, the initial issue is whether the term "piracy" contained in the definition of "advertising injury" encompasses patent infringement or inducement to infringe.

The Star defendants argue that patent infringement is a form of "piracy" by pointing to various dictionary definitions: "[U]nlawful reproduction or distribution of property protected by patent and trademark laws," (BLACK'S LAW DICTIONARY 1148 (6th ed 1990)); "[I]nfringement of the rights conferred by a patent or copyright," (OXFORD ENGLISH DICTIONARY 897 (2d ed 1989)); and the "unauthorized appropriation or use of a ... patented work," (WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 1096 (1989)).

Agreeing that the term "piracy" in isolation may well encompass patent infringement, USF & G contends that within the context of the "advertising injury" definition, "piracy" could reasonably describe only misappropriation in the advertisement itself. Some courts have agreed with this reasoning. *See I.C.D. Indus. Inc. v. Federal Ins. Co.*, 879 F.Supp. 480, 485–86 (EDPa1995); *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 428 (EDPa1994), *aff'd* 60 F.3d 813 (3rd Cir1995). Other courts, however, have reasoned that these differing interpretations merely demonstrate that the term "piracy" is ambiguous, and therefore have construed the term in favor of coverage for the insured. *See New Hampshire Ins. Co. v. RL Chaides Constr. Co., Inc.*, 847 F.Supp. 1452, 1456 (N.D.Cal.1994) ("*RL Chaides*"); *National Union Fire Ins. Co. v. Siliconix*, 729 F.Supp. 77, 79 (N.D.Cal.1989) ("*Siliconix*").

While the first construction of the term "piracy" appears to be the more reasonable of the two, this court cannot say that the second construction is *un*reasonable. This court therefore concludes that the term "piracy" is susceptible of more than one reasonable interpretation, and as such, under Oregon law must be construed in favor of the insured. *See Mission*, 58 Or.App. at 697, 650 P.2d at 933. Thus, "piracy" encompasses patent infringement, which necessarily includes an inducement to infringe.

## III. Did the Infringement Occur in the Course of Advertising Activities?

Even if "piracy" includes a claim for patent infringement, USF & G has a duty to defend only if that piracy "occurr[ed] in the course of the named insured's advertising activities." Policies, II(D), p. 9. Therefore, the issue is whether the alleged patent infringement or inducement to infringe occurred in the course of Star Technologies' advertising activities.

### A. What Constitutes Advertising Activities?

█ The Star defendants argue that the advertising activity took the form of meetings with potential clients and demonstrations of the allegedly infringing product. The policies do not define, nor is there any Oregon case law concerning, the meaning of "advertising activity." Needless to say, the Star defendants argue for a broad definition of the term, while USF & G urges a much narrower reading.

Courts have taken varying positions on the issue. A few have narrowly defined "advertising" to mean "public or widespread distribution of the alleged [advertising] material." *Fox Chem. Co., Inc. v. Great Am. Ins. Co.*, 264 N.W.2d 385, 386 (Minn.1978). *See also Bank of the West v. Superior Court of Contra Costa County*, 2 Cal.4th 1254, 1276 n. 9, 10 Cal.Rptr.2d 538, 553 n. 9, 833 P.2d 545, 560 n. 9 (1992) (citing cases). The majority of courts, however, have broadly construed "advertising activity" to encompass a variety of business solicitations. *See Sentex Sys. Inc. v. Hartford Accident & Indem. Co.*, 882 F.Supp. 930, 939 (CDCal1995) (personal one-on-one and group solicitation); *John Deere Ins. Co. v. Shamrock Indus. Inc.*, 696 F.Supp. 434, 439 (D Minn 1988), *aff'd*, 929 F.2d 413 (8th Cir1991) (three letters to one

client); *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 435 (Minn1994), *rev'd on other grounds,* 540 N.W.2d 843 (Minn1995) (single letter sent to client base).

In *New Hampshire Insurance Co. v. Fox-fire, Inc.,* 820 F.Supp. 489, 494 (NDCal1993), the district court pointed out that some of the cases narrowly construing "advertising activity" were faced with an advertising injury *exclusion.* In contrast, "because the term [advertising] is used within the context of the insuring provisions and not within an exclusion, the term should be interpreted broadly, with any doubts as to coverage resolved in favor of the insured." *Id,* quoting *American States Inc. Co. v. Canyon Creek,* 786 F.Supp. 821, 828 (NDCal1991).

This court concludes that the term "advertising activity" is ambiguous, and as such, must be construed broadly in favor of coverage under Oregon law. Thus, sales meetings by Star Technologies to demonstrate the allegedly infringing product to potential customers constitutes "advertising activity."

**B.  *Did Piracy Occur in the Course of Advertising Activities?***

Even though patent infringement may qualify as "piracy," and Star Technologies' activities may have constituted "advertising activity," USF & G does not have a duty to defend under the policies unless that piracy *occurred in the course of* Star Technologies' advertising activities. The Star defendants point out that paragraph 35 of Walters' Complaint alleges both direct infringement under 35 U.S.C. § 271(a), as well as inducement to infringe under 35 U.S.C. § 271(b). They argue that because one or the other of these alleged activities occurred in the course of client solicitations by Star Technologies, USF & G has a duty to defend.

As conceded by the Star defendants at oral argument, the majority of cases hold that, as a matter of law, direct patent infringement (the manufacture, use, and sale of an infringing product) does not occur during the course of advertising activities.[3] *See Simply Fresh Fruit v. Continental Ins. Co.,* 84 F.3d 1105, 1109 (9th Cir1996); *Iolab Corp. v. Seaboard Sur. Co.,* 15 F.3d 1500, 1506 (9th Cir1994); *RL Chaides,* 847 F.Supp. at 1457; *Siliconix,* 729 F.Supp. at 80. However, because inducement is the "active and knowing aiding and abetting of another's direct infringement," *RL Chaides,* 847 F.Supp. at 1458, the Star defendants contend that inducing clients at a sales meeting to purchase a product which would become an infringing product when the patent is issued constitutes inducement to infringe ("piracy") in the course of advertising activities sufficient to trigger the duty to defend.

Generally speaking, a direct infringer cannot also be liable as an inducer to infringe based on the same act. As several courts have pointed out, the act of encouraging someone to purchase a product is necessarily subsumed by the actual sale of that product. *See Self v. Fisher Controls Co., Inc.,* 566 F.2d 62, 64 (9th Cir1977) ("Contributory infringement actions are limited to situations where defendant itself has not directly infringed the patent by making, using, or selling the invention, under 35 U.S.C. § 271(a), but has induced someone else to infringe the patent."); *Jervis B. Webb v. Southern Sys., Inc.,* 495 F.Supp. 145, 147 (EDMich1980) ("[D]efendant's alleged inducement to infringe is actually a part of the direct infringement that defendant would be liable for because of its manufacture and sale of the product."). Very few products are actually sold without some sort of advertising, particularly when "advertising" is defined broadly. However, the circumstances of this case present a unique situation because sales made by Star Technologies prior to the issuance of the patent in May 1995 did not directly infringe the patent. As to those sales, liability of the Star defendants, if any,[4]

---

3.  The same holds true for contributory infringement, which is based solely on the sale of a patented component. *See* 35 U.S.C. § 271(c); *Intex Plastics Sales Co. v. United Nat'l Ins. Co.,* 23 F.3d 254, 257 (9th Cir1994).

4.  As the Star defendants have noted in their supplemental brief, courts are split as to whether liability for inducement can lie prior to the issuance of the patent. *Compare Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F.Supp. 1485, 1490 (DDel1985) (liability) *with National Presto*

would only be for inducement to infringe under 35 U.S.C. § 271(b).

■ Unlike direct infringement, it is possible for inducement to infringe to occur during the course of advertising activities. *See RL Chaides,* 847 F.Supp. at 1458 ("Advertising has been found to be a sufficient basis for a claim of inducement."); *Continental Ins. Co. v. Del Astra Indus., Inc.,* 1992 WL 471300, at *1 (NDCal1992) ("[A]dvertising alone can state a claim for infringement if the advertisement actively induces another to infringe."); *Rexnord, Inc. v. Laitram Corp.,* 1988 WL 141526, at *36 (EDWisc1988) (liability for inducement can be established where a party takes active steps to induce infringement through advertising or by providing instructions); *Union Ins. Co. v. Land & Sky, Inc.,* 247 Neb. 696, 703, 529 N.W.2d 773, 777 (1995) (*"Land & Sky"*) (liability for inducement can arise out of advertising activities). However, something more is required than mere advertising of a product for sale. In addition, the advertisement must instruct or explain to the purchaser exactly how to recreate or reassemble the product into one that infringes a patent. *See, e.g., Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 412 (5th Cir1963) (defendant advertised and personally demonstrated to purchasers how his device could be inserted into another object to recreate a patented product); *Rexnord,* 1988 WL 141526 at *36 (defendant instructed its customers how to assemble parts into an infringing product); *Rohm & Haas v. Owens-Corning Fiberglas Corp.,* 196 USPQ 726, 745 (NDAla1977) (defendant promoted and sold product "with the specific recommendation that they be used in an infringing manner," *i.e.,* molded under heat and pressure to approximate a patented product); *Land & Sky,* 247 Neb. at 703, 529 N.W.2d at 777 (advertising activities included instruction sheets demonstrating how to use the product in an infringing manner). Here, in contrast, Walters' Complaint does not allege that he was injured through advertising at all, let alone because Star Technologies provided detailed instructions to its customers on how to infringe.

*Indus. Inc. v. West Bend Co.,* 76 F.3d 1185, 1196

Furthermore, although Oregon courts have not addressed this issue, other courts have required that there be a causal connection between the injury and the advertising activity. *See Everest & Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 229 (9th Cir1994); *RL Chaides,* 847 F.Supp. at 1457; *Bank of the West,* 2 Cal.4th at 1275–76, 10 Cal.Rptr.2d at 551–54, 833 P.2d at 558–60 (citing *Siliconix,* 729 F.Supp. at 79–80, *Meyers & Sons Corp. v. Zurich Am. Ins.,* 74 N.Y.2d 298, 304, 546 N.Y.S.2d 818, 821, 545 N.E.2d 1206, 1209 (1989), and *Lazzara Oil Co. v. Columbia Casualty Co.,* 683 F.Supp. 777, 780 (MDFla1988)). As noted by the California Supreme Court:

> Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage alone would encompass most claims related to the insured's business.

*Bank of the West,* 2 Cal.4th at 1276, 10 Cal.Rptr.2d at 553, 833 P.2d at 560.

■ This court agrees that there must be a causal connection between the advertising injury and the advertising activity, and believes that the Oregon Supreme Court would reach the same conclusion if faced with this issue. Here, there is no such causal connection. The gravamen of Walters' action is premised on Star Technologies' manufacture and sale of the reconstruction processors prior to the issuance of the patent. *See* Walters Complaint, attached as Exhibit C to Stipulated Facts, ¶¶ 20, 21, 23, 25, 29, 32, 33, 34. Notably, Walters' Complaint does *not* allege injury based on Star Technologies' advertising or attempts to sell the reconstruction processors. In fact, it is only in the Star defendants' briefing on these motions that the topic of sales meetings and advertising activity arises. The Ninth Circuit has repeatedly found the requisite causal connection lacking in the absence of an allegation in the complaint implicating advertising activity. *See, e.g., Simply Fresh Fruit,* 84 F.3d at 1109; *Microtec Research Inc. v. Nationwide* (FedCir1996) (no liability).

*Mut. Ins. Co.,* 40 F.3d 968, 971 (9th Cir1994); *Everest & Jennings,* 23 F.3d at 229. *See also RL Chaides,* 847 F.Supp. at 1457.

■ While it is true that at least some of Star Technologies' sales meetings eventually resulted in the sales on which Walters' inducement claim is based, the sales meetings in and of themselves did not cause Walters' injury. In fact, prior to the issuance of the patent, if the sales meetings did not result in a sale, Walters suffered no cognizable harm at all because Star Technologies was neither inducing nor directly infringing a patent. The Star defendants' argument in favor of coverage is based on the mistaken premise that sales meetings and sales are part and parcel of the same advertising activity. However, a sale is not "advertising activity"; it is merely the desired *result* of advertising activity. *See RL Chaides,* 847 F.Supp. at 1457 ("Selling is not equivalent to advertising."). In order for a duty to defend to arise under the policies, the advertising activity itself (*i.e.* the sales meetings) "must *cause* the injury—not merely expose it." *Simply Fresh Fruit,* 84 F.3d at 1109 (emphasis in original).

■ Under Oregon law, USF & G's duty to defend arises only if Walters' Complaint "could, without amendment, impose liability for conduct covered by the policy." *Ledford,* 319 Or. at 399–400, 877 P.2d at 82. Nothing in Walters' Complaint implies that he was harmed by Star Technologies' advertising activities or sales meetings. Instead, his Complaint clearly alleges harm resulting from Star Technologies' manufacture and *sale* of the reconstruction processors. Without amendment, this court is hard-pressed to find that Walters' Complaint could render Star liable for inducement to infringe in the course of its advertising activity. Thus, USF & G has no duty to defend the Star defendants in the Walters action.

### ORDER

For the reasons set forth above, USF & G's motion for summary judgment (docket # 21) is GRANTED, and defendants' cross-motion (docket # 29) is DENIED. USF & G shall submit a form of judgment to the court for entry within 14 days from the date of this Order.