Argued and submitted December 10, 1999, reversed and remanded with instructions July 12, 2000

Joseph E. WEBER,
*Appellant,*

*v.*

CHICAGO TITLE INSURANCE
COMPANY OF OREGON,
an Oregon corporation,
*Respondent.*

(CCV 98 01 563; CA A103687)

7 P3d 714

Norman R. Hill argued the cause for appellant. With him on the briefs was Webb & Martinis.

Karen O'Kasey argued the cause for respondent. With her on the brief was Schwabe, Williamson & Wyatt.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals from the judgment that the trial court entered after granting defendant's summary judgment motion and the denial of his cross-motion for summary judgment. ORCP 47. Plaintiff sought a declaration from the trial court that defendant, his title insurance insurer, had a duty to defend him in a suit brought by third parties, Rola and Candace Cook. We reverse and remand.

We review the record for each motion in the light most favorable to the party opposing that motion. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978). The policy issued by defendant to plaintiff provides, among other coverage, coverage against loss or damage sustained or incurred by plaintiff by reason of "[a]ny defect in or lien or encumbrance on the title." In addition, the policy provides that defendant "will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations." However, the policy has an exception that provides that defendant

"will not pay costs, attorneys' fees or expenses [ ] which arise by reason of:

"* * * * *

"2. a. Easements, liens, encumbrances, interests or claims thereof which are not shown by the public records.

"b. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof."

The policy provides coverage to the following described property:

"Part of the Benjamin Jackson D.L.C. No. 41, in Sections 7 and 18, Township 5 South, Range 2 East and Sections 12 and 13, Township 5 South, Range 1 East of the Willamette Meridian, in Clackamas County, Oregon, described as follows:

"[metes and bounds description]

"EXCEPT that portion thereof conveyed to Peter W. Hutchinson * * *

"AND ALSO EXCEPTION THEREFROM that portion thereof conveyed to Hutchinson Air Park by Deed recorded July 19, 1977, as Recorder's Fee No. 77-28282, Clackamas County Records.

"AND FURTHER EXCEPTING THEREFROM that portion thereof conveyed to Hutchinson Air Park, Inc., by Deed recorded June 5, 1974, as Recorder's Fee No. 74-15122, Clackamas County Records.

"PARCEL II:

"Part of the Benjamin B. Jackson D.L.C. No. 41 in the Northwest one-quarter of the Southwest One-quarter of Section 7, Township 5 South, Range 2 East of the Willamette Meridian, in the County of Clackamas and State of Oregon, more particularly described as follows:

"[metes and bounds description]

"PARCEL III:

"Part of the Benjamin Jackson Donation Land Claim Number 41 in Section 7, Township 5 South, Range 2 East of the Willamette Meridian, in the County of Clackamas and State of Oregon * * *."

The complaint in the Cooks' claims for declaratory judgment against plaintiff alleges the following facts:

"[Plaintiff] owns Hutchinson Airpark which is adjacent to and west of [Cooks'] property. [Plaintiff] has set aside for proposed residential development * * * a portion of Hutchinson Airpark which he represents to enclose 45.1 acres and is more fully described as T5S, R2E, Section 7, Tax Lots 1501, 1507, 1601 and T5S, R2E, Section 18, Tax Lots 1401, 1405, W.M. The proposed development is located immediately adjacent to and extending south of [Cooks'] property and the western boundary of Flier's Haven in Clackamas County, State of Oregon.

"* * * * *

"The plat for Flier's Haven * * * was recorded on December 17, 1975, in the Clackamas County Deeds and Records, Book 69, page 14, number 2137. * * *

"On or about September 13, 1972, * * * [Plaintiff's and Cooks' predecessors in interest] executed 'Declaration of Covenants and Restrictions Running with the Land in Clackamas County, Oregon' * * *.

"The Covenants were recorded in the Clackamas Deeds and Records, on December 18, 1975 by recording certificates 75-37443.

"The Covenants discuss and regulate:

"(a) 'Runway easement appurtenant to' lots within Flier's Haven[.]

"The plat for Flier's Haven shows a 100-foot strip running in a northerly-southerly direction between the two rows of residences in Flier's Haven to its southern most boundary where the 100 foot-strip makes a 90-degree turn in a generally westerly direction, across the aforementioned proposed development onto Hutchinson Airpark. This strip was designed to be a taxiway providing access from the hangars on the residential lots to the runway of Hutchinson Airpark. It is referred to in the Covenants as the 'taxiway.' "

The Cooks' first claim seeks a declaration that: "The documents and events set forth above create an express easement appurtenant to [Cooks'] Lot 11, Flier's Haven, to use the runway of and taxiway to Hutchinson Airpark." Their second claim seeks the declaration of an easement by reference to the plat for Flier's Haven:

"The documents and events set forth above create an easement appurtenant to [Cooks'] Lot 11, Flier's Haven, for the use of the taxiway to the runway of Hutchinson Airpark by reference to such taxiway in the dedicated and recorded plat for Flier's Haven."

The documents referenced by and attached to the Cooks' complaint are a plat map of Flier's Haven and a "Declaration of Covenants and Restrictions Running with the Land" (the covenants). The plat provides in the upper left corner:

"Note: Dashed lines through the center of map indicate a 100 ft. private taxi-way easement for lot owners."

Provisions of the covenants reference "runway easement appurtenant to [a] lot," "all lots within this subdivision and * * * lots as to which airport easements have been granted"

and the taxiway. Those provisions purport to govern use of the airport runway and taxiway as well as establishing the method for maintaining and improving the taxiway and a monthly charge for use of the airport whether a lot owner owns an aircraft or not.

Defendant argues that it had "no duty to defend the Cook lawsuit because there was no 'possibility' that the relief sought by the Cooks was covered by the policy." Specifically, defendant argues that the covenants and plat are "not based on any 'public records' as used in the policy" because the covenants and plat "were only recorded in [the Cooks'] property chain of title and not Weber's chain of title." "Public records" are defined in the policy as "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge." The parties dispute whether that definition requires that the records be in plaintiff's chain of title before coverage is afforded by the policy.[1] However, there is a more fundamental reason why the trial court erred.

In *Gebrayel v. Transamerica Title Ins. Co.*, 132 Or App 271, 275, 888 P2d 83, *rev den* 321 Or 47 (1995), we summarized:

> "An insurer's duty to defend under an insurance contract is broader than its obligation to pay. The scope of the duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint [brought by the third party], to determine whether the allegations of the complaint show that there is a possibility that the policy provides coverage for the claims made. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994); *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969)[.] Any facts not alleged in the complaint are irrelevant in determining the existence of the duty to defend. *Ferguson v. Birmingham Fire Ins.*, *supra*, 254 Or at 505." (Some citations omitted.)

---

[1] Defendant argues that no reported Oregon case has decided that issue and relies on *Ryczkowski v. Chelsea Title and Guaranty Company*, 449 P2d 261 (Nev 1969). That case is about the duty of an insurer to indemnify rather than the duty to defend the insured.

Defendant concedes that "[t]he Cooks' property, known as 'Flier's Haven,' is directly next to the airport property owned by the insured" and that the airport property is covered by the title insurance policy. Cooks' complaint seeks a declaration of an easement over that property, that if granted, would create an encumbrance on plaintiff's title to Hutchinson Airpark. Those allegations are enough to trigger the duty to defend Cooks' action, unless an exception applies. Defendant relies upon the policy provision that excepts "[e]asements * * * which are not shown by the public records." However, the complaint alleges that the covenants and plats establishing the easement were recorded in Clackamas County's records in 1975 and 1977. Defendant, in support of its motion for summary judgment, attached the affidavit of its title manager. The affidavit stated that the manager had made a complete examination of plaintiff's chain of title and that none of the 93 documents recorded in plaintiff's chain of title included the records referred to in the Cooks' complaint. Thus, defendant's argument relies on facts that are outside the complaint. However, according to Cooks' complaint against plaintiff, the records that establish the claimed easement *are* part of the public record.

Under the Supreme Court's holdings in *Ledford* and in *Ferguson* defendant's duty to defend exists regardless of whether it is later determined that coverage does not exist. The fact that the public record relied on by Cooks may not be within plaintiff's chain of title does not impair defendant's duty to defend because that fact does not appear in Cooks' complaint, and Cooks' allegations may reasonably be interpreted to trigger coverage. Therefore, the circuit court erred in granting defendant's summary judgment motion and in denying plaintiff's motion for summary judgment.

Reversed and remanded with instructions to grant plaintiff's motion for summary judgment.