Argued and submitted November 20, 1997, affirmed July 15, 1998

Lawrence MARLEAU,
Mikeleen Reed,
and Oregon Trail Custom Log Homes,
*Appellants,*

*v.*

TRUCK INSURANCE EXCHANGE
and David Flippen,
*Respondents.*

(CCV 95 08 506; CA A93629)

963 P2d 715

Christopher A. Rycewicz argued the cause for appellants. With him on the briefs were Stewart Sokol & Gray, LLC, Michael J. Knapp and Myers & Knapp.

William G. Earle argued the cause for respondents. With him on the brief were Alan Gladstone and Hallmark, Keating & Abbott, P.C.

Before Riggs, Presiding Judge, and Landau and Wollheim,* Judges.

LANDAU, J.

---

* Wollheim, J., *vice* Leeson, J., resigned.

## LANDAU, J.

At issue in this case is whether defendant Truck Insurance Exchange[1] had a duty to defend its insureds, plaintiffs Marleau, Reed and Oregon Trail Custom Log Homes (Oregon Trail), in an action brought against them by Charles and Jean Parlett. The trial court entered summary judgment for defendant, holding that the Parletts' complaint alleged conduct outside the coverage of the insurance policy. We agree and affirm.

Marleau and Reed operated a log home construction business under the name, "Oregon Trail Custom Log Homes." Both Marleau and Reed were named registrants for the business name. In 1990, defendant issued a commercial general liability policy, naming as the insured Marleau doing business as Oregon Trail. The policy, among other things, obligated defendant to defend any suit for "personal injury" or "advertising injury." The policy defined the terms "personal injury" and "advertising injury" to include "[o]ral or written publication of material that slanders or libels a person" and "[o]ral or written publication of material that violates a person's right to privacy." The policy expressly excluded from coverage injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured *with knowledge of its falsity*." (Emphasis supplied.)

In September 1990, Oregon Trail agreed to build a log home for the Parletts. The Parletts were displeased with the construction of the home, and, in August 1993, they filed a complaint against Marleau, Reed and Oregon Trail. The complaint alleged claims for breach of contract and warranty, negligence, negligence *per se*, conversion, fraud and intentional infliction of emotional distress. On their claim for intentional infliction of emotional distress, the Parletts alleged:

"108. After plaintiffs began requesting Defendants Reed and Marleau to remedy defects in the construction and to complete performance of the contract, Reed and

---

[1] Defendant Flippen was dismissed from the case and is not a party to the appeal. When we refer to defendant in this opinion, we refer to Truck Insurance Exchange only.

Marleau conspired with each other to harass, annoy, disgrace, humiliate, discredit and cause severe emotional distress to plaintiffs, as set forth infra *with the intention of causing plaintiffs so much emotional distress* that plaintiffs would sell their log home and move from the Rhododendron community and abandon all claims against Reed and Marleau.

"109.   In *intentionally committing their outrageous acts* against plaintiffs, defendants Reed and Marleau did so with the knowledge that Plaintiff Jean Parlett suffered from a nervous disorder that was aggravated by stress. Defendants Reed and Marleau strategically timed the commission of their outrageous acts when plaintiff Charles Parlett was out of town and when Jean Parlett was home by herself and without her husband's emotional and physical support.

"110.   Defendant Reed's and Marleau's intentional acts included, but are not limited to, the following:

"a.   Telling Jean Parlett that her bank loan had been canceled *when it was not;*

"b.   Informing representatives of plaintiffs' lender that plaintiffs were not paying their debts *when such information was false*;

"c.   Telling members of the Rhododendron community and building tradesmen working on the log home construction that Jean Parlett was committing adultery;

"d.   Telling a local attorney that plaintiffs were getting a divorce because Jean Parlett was in love with Defendant Marleau;

"e.   Telling members of the local community that had stopped by defendants' house to inquire of plaintiffs' whereabouts, that plaintiffs were divorced and that Jean Parlett had been forced to move to a campground;

"f.   Telling local public safety officials that Jean Parlett was insane and had hired someone to shoot at Marleau's and Reed's home from a car, and also that plaintiffs would burn down Marleau's and Reed's home;

"g.   Telling members of the Rhododendron community that Jean Parlett was 'in love' with Defendant Marleau;

"h.   Telling members of the Rhododendron community that Jean Parlett had been recently released from a mental institution;

"i.   Telling plaintiff Charles Parlett over the telephone when he was out of town that his wife was sleeping with defendant Marleau's employees, in love with Marleau and that she was abusing drugs; and

"j.   Telling plaintiffs' attorney that if he wants to know what kind of a person Plaintiff Jean Parlett is, he should observe her at a local tavern.

"111.   *The foregoing acts were vicious, defamatory, intentional* and constituted extraordinary transgressions of the bounds of socially tolerable conduct. As a direct and substantial result, plaintiffs were humiliated, disgraced and suffered severe emotional distress, all to their general damage of $75,000.00."

(Emphasis supplied.)

Marleau and Reed tendered defense of the lawsuit to defendant. They conceded that the first six claims alleged conduct that fell outside the coverage of their policy. They argued that they nevertheless were entitled to defense because the allegations of the claim for intentional infliction of emotional distress were based on alleged defamatory statements that constituted a claim for "personal injury" or "advertising injury" under the terms of the policy. Defendant initially refused to defend. A year later, defendant accepted the tender as to Marleau, but continued to refuse to defend Reed. The Parlett lawsuit was eventually settled.

Plaintiffs then initiated this action to recover the costs of defending Marleau for the first year of litigation and for the costs of defending Reed. Plaintiffs alleged that, because the Parletts' claim for intentional infliction of emotional distress was a covered claim, defendant had a duty to defend the entire case. Defendant answered alleging, among other things, that it had no duty to defend, because the Parletts' complaint alleged only intentional conduct that fell within the exclusion for defamatory statements made "with knowledge of [their] falsity."

Both plaintiffs and defendant moved for summary judgment. The trial court granted defendant's motion and denied plaintiffs'. It concluded that defendant did not have a duty to defend because the Parletts' complaint alleged defamation made "with knowledge of its falsity" and because it would violate public policy to require coverage in the face of allegations of intentional conduct.

On appeal, plaintiffs argue that the trial court erred in concluding that defendant had no duty to defend them in the Parlett litigation. They argue that, although the Parletts' complaint generally alleged that plaintiffs acted intentionally, there is no allegation that they acted with knowledge of the falsity of their statements. They further argue that, although the complaint includes allegations of intentional conduct, in the context of a claim for intentional infliction of emotional distress, those allegations would support "lesser included" torts that do not require proof of such intentional conduct. In support of that argument, plaintiffs rely on *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 460 P2d 342 (1969). Defendant argues that the complaint plainly alleges that plaintiffs intentionally defamed the Parletts, and that necessarily involves making knowingly false statements. Defendant argues that, in any event, the complaint repeatedly alleges that plaintiffs acted with the subjective intent to cause the Parletts emotional distress, which implicates the public policy against requiring coverage for intentional wrongdoing.

We review the trial court's summary judgment rulings to determine whether there are genuine issues of material fact and whether defendant was entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1996).

■ Whether an insurer has a duty to defend presents a question of law, determined by comparing the terms of the insurance policy and the allegations of the complaint against the insured. *Klamath Pacific Corp. v. Reliance Ins. Co.*, 151 Or App 405, 413, 950 P2d 909 (1997), *on recons* 152 Or App 738, 955 P2d 340 (1998). We determine first whether the conduct alleged in the complaint falls within the conduct covered or excluded by the policy. In *Ledford v. Gutoski*, 319 Or 397,

399-400, 877 P2d 80 (1994), the Supreme Court held that that is determined by the following analysis:

> "Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.
>
> "* * * * *
>
> "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage. Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured."

(Citations omitted; emphasis in original.)

Determining that conduct alleged in the complaint falls within the terms of coverage in the policy does not end the inquiry. There is a public policy against providing coverage for injuries when the insured intended to cause the particular injury or harm. As the Supreme Court explained in *Nielsen v. St. Paul Companies*, 283 Or 277, 280-81, 583 P2d 545 (1978):

> "Insurance coverage for the protection of one who intentionally inflicts injury upon another is against public policy, and whether the insurer is relieved for this reason from the defense of an action against its insured depends upon the allegations of the complaint. It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches."

(Citations omitted.)

We first consider whether the conduct alleged in the Parletts' complaint falls within an exclusion from coverage. The complaint alleged that plaintiffs "conspired with each

other to harass, annoy, disgrace, humiliate, discredit and cause severe emotional distress" by "intentionally" making ten statements about them and that those statements were "vicious, defamatory, intentional and constituted extraordinary transgressions of the bounds of socially tolerable conduct." The complaint alleges that two of the statements were false. There is no corresponding allegation of falsity with respect to the other eight statements.

■■ It is true that the complaint alleges that plaintiffs made defamatory statements intentionally. It does not necessarily follow, however, that plaintiffs made the statements with knowledge of their falsity. Plaintiffs could have made the statements intentionally, but without knowledge of their truth or falsity. Knowledge of falsity is not a necessary element of a defamation claim. *See, e.g., Bank of Oregon v. Independent News*, 298 Or 434, 438, 693 P2d 35 (1985); *Cooper v. PGE*, 110 Or App 581, 586, 824 P2d 1152, *rev den* 313 Or 209 (1992). At the very least, the complaint is ambiguous on the issue of plaintiffs' knowledge of the falsity of the statements that they made. Therefore, we cannot conclude that the conduct alleged falls within the exclusion for defamatory statements made "with knowledge of [their] falsity."

■ We turn then to the question whether the conduct alleged in the Parletts' complaint nevertheless cannot be covered, because of the public policy against covering intentionally tortious conduct. The complaint alleges that plaintiffs intentionally made statements about the Parletts, that they knew the Parletts would be harmed by the statements, that they made the statements "with the intention of causing plaintiffs * * * emotional distress," and that they "strategically timed" their statements to maximize that harm. There can be no question that those allegations describe the sort of subjective intention to harm that triggers the public policy against coverage.

Plaintiffs do not contest that. Their argument is that the complaint nevertheless would permit them to prove tortious conduct that did not necessarily require such subjective intent to harm. In *Ledford*, however, the Supreme Court heard and rejected precisely the same argument. In that case, Ledford filed a complaint against Kuhl for malicious

prosecution. The complaint alleged that Kuhl had "intended to harass, annoy, harm and cause expense" to Ledford. Kuhl tendered defense to his insurer, Northwest, and when Northwest refused, Kuhl filed a third-party complaint against the insurer. The trial court entered summary judgment for Northwest on the third-party claim on the ground that the insurer had no duty to defend. On appeal, Kuhl argued that Northwest did have a duty to defend, because the complaint could have permitted evidence and recovery on a basis other than his intentional conduct. The Supreme Court disagreed:

> "Kuhl's argument * * * miss[es] the point in evaluating the duty to defend. In analyzing the duty to defend, a court's focus should be on the conduct alleged in the complaint. * * * In this case, the Ledford complaint alleged that Kuhl *did* subjectively intend to cause injury or harm to Ledford. The Ledford complaint did not allege, and without amendment would not permit proof, that Kuhl instituted the criminal action against Ledford for some 'malicious' purpose other than to 'harass, annoy, harm and cause expense to' Ledford. Because the complaint alleged only that Kuhl subjectively intended to harm or injure Ledford, it is irrelevant whether or not a claim for malicious prosecution could, in theory, be sustained where the defendant did not have a subjective intent to cause harm or injury to the plaintiff."

*Ledford*, 319 Or at 402-03 (emphasis in original). So, too, here. The Parletts' complaint alleged that plaintiffs acted with the intent of causing the Parletts emotional distress. Whether, in theory, they could recover for intentional infliction of emotional distress without such subjective intent to harm is irrelevant.

We must acknowledge that there is language in the Supreme Court's earlier decision in *Ferguson* that is to the contrary. 254 Or at 506-07. That language cannot be reconciled with the court's decision in *Ledford*, however, and must be regarded as no longer controlling.

We conclude that the trial court did not err in determining that defendant did not owe plaintiffs a duty to defend them in the action brought by the Parletts and in entering summary judgment on that ground.

Affirmed.