Argued and submitted September 7, 2000; reassigned June 20; resubmitted July 3, decision of the Court of Appeals and judgment of the circuit court affirmed December 13, 2001, petition for reconsideration denied February 12, 2002

Lawrence MARLEAU,
Mikeleen Reed,
and Oregon Trail Custom Log Homes,
*Petitioners on Review,*

*v.*

TRUCK INSURANCE EXCHANGE
and David Flippen,
*Respondents on Review.*

(CC CCV 95 08 506; CA A93629; SC S46406)

37 P3d 148

Christopher A. Rycewicz, of Rycewicz & Chenoweth, P.C., Portland, argued the cause for petitioners on review. With him on the briefs was Michael J. Knapp, of Meyers & Knapp, Portland.

William G. Earle, of Abbott Davis Rothwell Mullin & Earle, PC, Portland, argued the cause and filed the briefs for respondents on review. With him on the briefs was Alan Gladstone.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, and De Muniz, Justices.**

DE MUNIZ, J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate the decision of this case. Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case. Leeson, Riggs, and Balmer, JJ., did not participate in the consideration or decision of this case.

## DE MUNIZ, J.

In this insurance case, we must determine whether Truck Insurance Exchange (defendant)[1] had a duty to defend its insured, Marleau, and Marleau's business partner, Reed (plaintiffs), in a tort action alleging intentional infliction of emotional distress. The trial court entered summary judgment in favor of defendant. The Court of Appeals affirmed, holding that, although the insurance policy covered the conduct alleged, public policy against insurance coverage for intentionally inflicting injury upon another precluded coverage. *Marleau v. Truck Insurance Exchange*, 155 Or App 147, 154-55, 963 P2d 715 (1998). We allowed review and now conclude that the insurance policy at issue does not cover the conduct alleged in the claim for intentional infliction of emotional distress. Accordingly, we do not address the public policy argument upon which the Court of Appeals relied. We affirm the decision of the Court of Appeals and the judgment of the circuit court.

The material facts are not in dispute. Plaintiffs Marleau and Reed operated "Oregon Trail Custom Log Homes" (Oregon Trail), a log home construction business. Defendant issued a commercial general liability policy naming Marleau, doing business as Oregon Trail, as the insured. In addition to bodily injury and property damage, the policy covered "personal injury liability" of the insured:

"COVERAGE B. PERSONAL * * * INJURY LIABILITY

"1. Insuring Agreement.

"a. [Truck Insurance Exchange] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' * * * to which this insurance applies. * * *"

A separate section of the policy defined "personal injury":

" 'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

---

[1] Defendant Flippen was dismissed from the case and was not a party to the appeal. *Marleau v. Truck Insurance Exchange*, 155 Or App 147, 149 n 1, 963 P2d 715 (1998). Accordingly, we refer to "Truck Insurance Exchange" as the only defendant throughout this opinion.

"a. False arrest, * * *;

"b. Malicious prosecution;

"c. Wrongful * * * eviction * * *;

"d. Oral or written publication of material that slanders or libels a person * * * or disparages a person's * * * goods, products, or services; or

"e. Oral or written publication of material that violates a person's right to privacy."

The policy excluded "personal injury * * * arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Under the policy, defendant had the duty to defend any action seeking damages for "personal injury."

The Parletts were customers of Oregon Trail. After Oregon Trail built the Parletts' log home, a dispute arose between plaintiffs and the Parletts. The Parletts brought an action against plaintiffs and against Oregon Trail, alleging breach of contract, breach of warranty, negligence, negligence *per se*, conversion, fraud, and intentional infliction of emotional distress.

As noted above, only the claim for intentional infliction of emotional distress remains at issue in this action. In that claim, the Parletts alleged that:

"Reed and Marleau conspired with each other to harass, annoy, disgrace, humiliate, discredit and cause severe emotional distress to [the Parletts] * * * with the intention of causing [the Parletts] so much emotional distress that [the Parletts] would sell their log home and move from the Rhododendron community and abandon all claims against Reed and Marleau.

"In intentionally committing their outrageous acts against [the Parletts], * * * Reed and Marleau did so with the knowledge that * * * Jean Parlett suffered from a nervous disorder that was aggravated by stress. * * * Reed and Marleau strategically timed the commission of their outrageous acts when * * * Charles Parlett was out of town and when Jean Parlett was home by herself and without her husband's emotional and physical support."

The following "intentional acts" gave rise to the claim:

"a. Telling Jean Parlett that her bank loan had been canceled when it was not;

"b. Informing representatives of [the Parletts'] lender that [the Parletts] were not paying their debts when such information was false;

"c. Telling members of the Rhododendron community * * * that Jean Parlett was committing adultery;

"d. Telling a local attorney that [the Parletts] were getting a divorce because Jean Parlett was in love with Defendant Marleau;

"e. Telling members of the local community * * * that [the Parletts] were divorced and that Jean Parlett had been forced to move to a campground;

"f. Telling local public safety officials that Jean Parlett was insane and had hired someone to shoot at Marleau's and Reed's home from a car, and also that [the Parletts had threatened to] burn down Marleau's and Reed's home;

"g. Telling members of the Rhododendron community that Jean Parlett was 'in love' with Defendant Marleau;

"h. Telling members of the Rhododendron community that Jean Parlett had recently been released from a mental institution;

"i. Telling * * * Charles Parlett over the telephone when he was out of town that his wife was sleeping with * * * Marleau's employees, in love with Marleau and that she was abusing drugs[.]"

Finally, the claim alleged:

"The foregoing acts were vicious, defamatory, intentional and constituted extraordinary transgressions of the bounds of socially tolerable conduct. As a direct and substantial result, [the Parletts] were humiliated, disgraced and suffered severe emotional distress, all to their general damage of $75,000."

Approximately one year after the Parletts had filed their complaint, defendant accepted the tendered defense of

plaintiff Marleau under a reservation of the right to deny coverage.[2] Defendant refused the tender as to plaintiff Reed, arguing that she was not an insured.

After settling the Parletts' action, plaintiffs brought this action to recover the costs of defending plaintiffs Reed and Marleau during the first year of the pendency of the Parletts' action. Plaintiffs ultimately moved for partial summary judgment, arguing that they were entitled to a defense because the claim for intentional infliction of emotional distress alleged that they had invaded the Parletts' privacy and had defamed the Parletts, and those offenses were covered under the "personal injury" coverage of plaintiffs' policy. They also argued that, if defendant had a duty to defend plaintiff Marleau, then it also had a duty to defend plaintiff Reed, even if she was not a named insured, because of Marleau's potential vicarious liability for Reed's actions. Plaintiffs' theory was that, because they were partners, Marleau could be held vicariously liable for Reed's actions and, thus, the defense of Marleau had to include a defense of Reed.

Defendant also moved for summary judgment, arguing that it had no duty to defend because the policy did not cover the Parletts' claim for intentional infliction of emotional distress.[3] The trial court concluded that both the terms of the policy and public policy precluded coverage of the Parletts' claim, and entered summary judgment in defendant's favor. Plaintiffs appealed. As noted above, the Court of Appeals affirmed, concluding that the insurance policy covered the allegations in the Parletts' intentional infliction of emotional distress claim, but that such coverage was against public policy. *Marleau*, 155 Or App at 154-55. We allowed plaintiffs' petition for review.

---

[2] The parties disagree concerning when plaintiffs first tendered defense of the Parletts' action to defendant. Because we hold that the insurer did not have a duty to defend, we need not resolve that disagreement.

[3] Defendant does not dispute that, if it had a duty to defend its insured against one claim in the complaint, then it had a duty to defend against the entire complaint. *See Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 506, 460 P2d 342 (1969) (when complaint contains two counts, one falling outside policy coverage and the other within, insurer has duty to defend).

"We review the record on summary judgment in the light most favorable to the party opposing the motion." *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309, 951 P2d 720 (1998). In this case, such review presents several questions of law. The ultimate question is whether defendant had a duty to defend its insured against the Parletts' claim for intentional infliction of emotional distress. The answer to that question depends on whether the policy covered the Parletts' claim and, if so, whether public policy nevertheless precluded such coverage. *See Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999) (insurance policy addressed prior to public policy). Accordingly, we turn first to the question whether the insurance policy covered the Parletts' claim.

■ To answer that question, we must examine two documents: the insurance policy and the Parletts' complaint. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994). In regard to the insurance policy, we must determine from its terms and conditions what the parties intended the policy to cover. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). We then examine the Parletts' complaint to determine if it, "without amendment, may impose liability for conduct covered by the policy[.]" *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969).

According to the terms and conditions of the personal injury provision of the insurance policy, set out at 333 Or at 85-86, the parties to the insurance contract intended the policy to cover personal injury arising out of any of the five enumerated "offenses." Those five "offenses" are essentially five different torts: false arrest, malicious prosecution, wrongful eviction, defamation, and invasion of privacy. In this case, the issue is whether, according to the allegations of the complaint, the Parletts' injury arose out of any one of those "offenses" or torts.[4] That question can be answered only by examining the Parletts' complaint.

---

[4] Although "offense" is not always synonymous with "tort," for purposes of this opinion, the difference in meaning between the two words is not significant. We will use the word "offense" in this opinion, because the policy used that word.

Because the parties agree that no other claim in the Parlett complaint alleges conduct covered by the policy, our examination of the complaint in this case is limited to the claim identified as a claim for intentional infliction of emotional distress. The parties agree that, as identified in the complaint, that claim alleges that the Parletts' injury arose out of the "offense" of intentional infliction of emotional distress. They also agree that that offense is not covered by the policy. However, they disagree about whether that claim for intentional infliction of emotional distress, without amendment, also may have imposed liability for either invasion of privacy or defamation, offenses that the policy covered.

The parties first disagree about how to determine, under *Ferguson*, 254 Or at 507, whether a particular claim, "without amendment, may impose liability" for both an excluded and a covered offense. Plaintiffs argue that, if the allegations in the claim, without amendment, state facts sufficient to constitute a claim for conduct that the policy covers, then the insurer has a duty to defend, even if those facts are not stated separately from facts that constitute a claim for excluded conduct. Defendant argues that, if the claims require any amendment, even an amendment as to form such as one that would be required if the complaint failed to state the claims separately as required under ORCP 16 B,[5] then the complaint does not, *"without amendment"* (emphasis added) impose liability for a covered offense, and the insurer does not have a duty to defend. As discussed below, the rationale for the *Ferguson* "without amendment" standard supports plaintiffs' interpretation.

In *Ferguson*, this court explained that the reason for the "without amendment" standard is to ensure that an insurer will not owe a duty to defend unless the complaint provides the insurer with sufficient notice of the insured's

---

[5] ORCP 16 B provides, in part:

"Each separate claim or defense shall be separately stated. Within each claim alternative theories of recovery shall be identified as separate counts."

If a claim is not separately stated, then a party may move to strike under ORCP 21 E:

"[T]he court may order stricken * * * any pleading containing more than one claim * * * not separately stated. * * *"

potential liability for conduct that is covered under the policy. 254 Or at 507. Thus, the insurer has a duty to defend so long as the complaint contains one claim that the policy covers. *Id.* at 506. This court consistently emphasizes the "notice" rationale when asked to determine whether an insurer has a duty to defend. *See, e.g., Ledford,* 319 Or at 400 (insurer should be able to determine from face of complaint whether to accept tender of defense of action).

◼ Moreover, this court has recognized that a complaint need not plead a claim in perfect form to provide notice to the insurer. Indeed, if the complaint is unclear, but "may be reasonably interpreted to include an incident within the coverage of the policy, [then] there is a duty to defend." *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 416, 373 P2d 412 (1962). It is the substance of the complaint, not its form, that is at the heart of the inquiry. *See Ledford,* 319 Or at 402 (court should focus on conduct alleged in complaint in analyzing duty to defend).

◼ From those principles, it follows that the insurer also has a duty to defend if allegations in a complaint, identified as a single claim for relief, in fact state more than one claim for relief, at least one of which is for conduct covered by the policy. In other words, neither the failure to identify correctly the claims nor the failure to state them separately defeats the duty to defend. As this court previously has stated, "in the absence of any compelling evidence of no coverage, the insurer owes a duty to defend if the injured claimant can recover under the *allegations* of the complaint upon *any* basis for which the insurer affords coverage." *Casey v. N.W. Security Ins. Co.,* 260 Or 485, 489, 491 P2d 208 (1971) (emphasis added). Today, we so hold: An insurer has a duty to defend if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy. We now turn to apply that standard to the complaint in this case.

Plaintiffs contend that the factual allegations of the Parletts' claim for intentional infliction of emotional distress also state claims for invasion of privacy and for defamation, both of which are covered offenses under the "personal injury" provision of the insurance policy. The Court of

Appeals agreed that the Parletts' claim stated a claim for defamation, but it did not explain that aspect of its holding. *Marleau*, 155 Or App at 154. For the reasons discussed below, we conclude that the Parletts' intentional infliction of emotional distress claim did not state a claim for invasion of privacy or defamation. We begin by addressing plaintiffs' argument concerning whether the Parletts' allegations constitute a claim for invasion of privacy. Plaintiffs assert, without elaborating, that the factual allegations of the Parletts' complaint state two different invasion of privacy claims: a "false light" claim and a claim for public disclosure of private facts. First, we address the law concerning invasion of privacy by placing another in a "false light."

This court has referred to the definition of the tort of invasion of privacy by "false light" offered by the *Restatement (Second) of Torts*:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> "(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Id.* at § 625E (1977). *See Reesman v. Highfill*, 327 Or 597, 607, 965 P2d 1030 (1998) (discussing elements of "false light" claim pursuant to *Restatement (Second) of Torts*).

■ It requires little analysis to conclude that the Parletts' claim fails to state a claim for invasion of privacy by "false light," under the elements listed above.[6] Invasion of

---

[6] Although we need not resolve the question here, we note that we are not certain of the accuracy, by way of *dictum*, in *Reesman* that "[t]his court previously has not recognized the tort of invasion of privacy by false light." 327 Or at 607.

In *Tollefson v. Price*, 247 Or 398, 430 P2d 990 (1967), a decision that predates the *Restatement (Second) of Torts* by ten years, this court sustained a pleading that alleged invasion of privacy by publication of false facts. This court identified the claim at issue as a claim of invasion of privacy by public disclosure of private facts. *Id.* at 401. However, if we apply the *Restatement* definition quoted above to the claim at issue in *Tollefson*, it is clear that the pleading at issue also stated a claim for invasion of privacy by "false light." In that regard, this court has "recognized" a "false light" claim, although it had not specifically so stated before *Reesman*.

privacy by "false light" requires that the matter be both *false* (or that it create a false impression) and *publicized*. The only disclosure in the Parletts' claim that complies with the former requirement, "informing * * * [the Parletts'] lender that [the Parletts] were not paying their debts when such information was false" (allegation "b," *ante*), does not comply with the latter. Disclosure to the individual lender does not constitute "giving publicity." *See Tollefson v. Price*, 247 Or 398, 402, 430 P2d 990 (1967) ("publicity" element requires communication either to public generally or to large number of persons).

Plaintiffs' argument that the Parletts' claim states a claim for public disclosure of private facts also fails. As the name implies, that tort requires that the tortfeasor *publicly* disclose *private* facts about another. *Id.* In contrast to a "false light" claim, the facts disclosed may be true. However, not every disclosure of a private fact will give rise to a claim in tort. The tortfeasor's conduct must be "wrongful" in some respect apart from inflicting emotional distress on the plaintiff. As this court held in *Anderson v. Fisher Broadcasting Co.*, 300 Or 452, 469, 712 P2d 803 (1986):

> "[I]n Oregon the truthful representation of facts concerning a person, even facts that a reasonable person would wish to keep private and that are not 'newsworthy,' does not give rise to common-law tort liability for damages for mental or emotional distress, unless the manner or purpose of defendant's conduct is wrongful in some respect apart from causing the plaintiff's hurt feelings."

The Parletts included four allegations of disclosures that arguably were "public": the disclosures made to "members of the Rhododendron community" (allegations "c," "e," "g," and "h," *ante*). Assuming, *arguendo*, that those disclosures constituted disclosures of "private facts," the Parletts' claim does not give rise to tort liability for public disclosure of those facts because the Parletts did not allege facts demonstrating that plaintiffs' conduct in making those disclosures was wrongful. For example, the Parletts did not allege that plaintiffs obtained the information in some wrongful way, *see Anderson*, 300 Or at 469, *citing McLain v. Boise Cascade Corp.*, 271 Or 549, 533 P2d 343 (1975) (unobtrusive filming surveillance during daylight hours of the plaintiff's activities

that could have been observed by passers-by not invasion of privacy), or that plaintiffs violated some obligation of secrecy in disclosing the information about the Parletts, *see id.* at 469, *citing Humphers v. First Interstate Bank*, 298 Or 706, 716-17, 696 P2d 527 (1985) (person who knows facts without obligation of secrecy does not commit tort by disclosing them to another). Thus, the Parletts' allegations fail to state a claim for invasion of privacy by public disclosure of private facts.

Finally, we turn to plaintiffs' argument that the factual allegations in the Parletts' complaint constitute a claim for defamation. When we review the allegations with the elements of the tort of defamation in mind, we conclude that they fail to state a claim for that covered offense. Again, we begin by reviewing the elements of the tort at issue.

 To state a claim for defamation, the complaint must state facts sufficient to establish that the defendant published to a third person a defamatory statement about plaintiff. *Wallulis v. Dymowski*, 323 Or 337, 343, 918 P2d 755 (1996). A defamatory statement is one that would subject another to "* * * hatred, contempt or ridicule * * * [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Reesman*, 327 Or at 603 (internal quotations and citations omitted). Unless a statement constitutes defamation *per se*, a plaintiff must allege that the statement was false. *See Fowler v. Donnelly*, 225 Or 287, 293, 358 P2d 485 (1960) (discussing the necessity of alleging the falsity of words complained of in libel and slander claims).

 The Parletts's complaint does not allege that plaintiffs made the disparaging statements in writing. Therefore, the only possible type of defamation at issue in this case is defamation by spoken words, *i.e.*, slander. An additional pleading requirement applies to cases of slander: Unless the statement constitutes slander *per se*, the plaintiff must allege special damages. That rule historically applied to all defamation, *see Peck v. Coos Bay Times Pub. Co. et al*, 122 Or 408, 417, 259 P 307 (1927) (so stating), but, in *Hinkle v. Alexander*,

244 Or 267, 279, 417 P2d 586 (1966), this court abandoned that rule in cases of libel.

When we review the Parletts' complaint with those requirements in mind, we note that the Parletts did not allege special damages as a result of plaintiffs' conduct. Therefore, the complaint does not state a claim for slander unless it states a claim for slander *per se*.

Plaintiffs argue that allegation "c" of the Parletts' claim—the allegation that plaintiffs told others that Jean Parlett was committing adultery—constitutes slander *per se*. In support of that argument, plaintiffs rely on *Cook v. Safeway Stores, Inc.*, 266 Or 77, 82, 511 P2d 375 (1973), which this court referred (in *dicta*) to an assertion of "unchastity in a woman" as an example of words that were actionable *per se*.[7] However, although that is the rule in many other jurisdictions, it is not the common-law rule and, as explained below, it is not the rule in Oregon.

Spoken words are actionable *per se* in Oregon only if they are words tending to injure the plaintiff in his or her profession or business, or if they impute to plaintiff the commission of a crime involving moral turpitude. *Davis v. Sladden*, 17 Or 259, 261, 21 P 140 (1889). At common law, an accusation of unchastity was regarded as a "spiritual" matter and "actionable only with proof of 'temporal' damage, such as the loss of a marriage." *Prosser and Keeton on the Law of Torts*, § 112, 792-93 (5th ed 1984). That rule was changed in regard to women in England in 1891, under the "Slander of Women Act." *Id.*; *see also Barnett v. Phelps*, 97 Or 242, 248, 191 P 502 (1920) (discussing how "Slander of Women Act" changed common law in England). However, Oregon continued to follow the common law. *Davis*, 17 Or at 261; *see also Barnett*, 97 Or at 249 (criticizing *Davis*, yet noting change in common law should be made by legislature, not court).

In this jurisdiction at the time of the decision in *Davis*, asserting that a woman had committed adultery did

---

[7] *Cook* is not the only opinion in which this court has referred to an assertion of "unchastity in a woman" as slander *per se*. *See, e.g., Hinkle*, 244 Or at 273 (so referring).

constitute slander *per se*, but only because adultery was prosecutable as a crime. *Davis*, 17 Or at 263. However, adultery no longer is a crime under Oregon law. *See Brown v. Vogt*, 272 Or 482, 484, 538 P2d 362 (1975) (noting that legislature decriminalized adultery in 1971). Thus, asserting that a woman has committed adultery no longer imputes criminal conduct to her. Accordingly, the allegations of paragraph "c" of the Parletts' claim do not state a claim for slander *per se*.

Plaintiffs do not argue that any other allegation in the Parlett's complaint constitutes slander *per se*. Accordingly, the factual allegations of the Parletts' claim do not state a claim for defamation.

In sum, the factual allegations of the Parletts' claim do not state a claim for invasion of privacy by "false light," for public disclosure of public facts, or for defamation. Therefore, they do not state a claim for any "offense" covered under the "personal injury" provision of the insurance policy. Accordingly, we hold that the insurer did not have a duty to defend.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.