Argued and submitted August 16, 2023, affirmed September 13, 2023

STATE OF OREGON,
acting by and through
the Oregon Department of State Lands and
the Oregon Department of Transportation,
*Plaintiff-Respondent,*

*v.*

PACIFIC INDEMNITY COMPANY,
as successor to all of the liabilities of
Northwestern Pacific Indemnity Company et al.,
*Defendants,*

*and*

ARROWOOD INDEMNITY COMPANY,
as successor to all of the liabilities of
Royal Globe Insurance Company,
*Defendant-Appellant.*

Multnomah County Circuit Court
15CV29585; A175985

536 P3d 1105

Arrowood Indemnity Company (Arrowood), an insurance company, appeals from a judgment for the Oregon Department of Transportation (ODOT) determining that Arrowood, which insured property owned by ODOT, has a duty to pay ODOT's full defense costs in litigation by the Environmental Protection Agency (EPA) relating to the cleanup of environmental contamination at the Portland Harbor Superfund site. In its first assignment of error, Arrowood asserts that the trial court erred in granting ODOT's motion for summary judgment and in denying Arrowood's motion, determining that Arrowood has a duty to defend ODOT. In its s A174076.pdf econd assignment, Arrowood asserts that the trial court erred in rejecting its contention that it is entitled to apportion its duty to defend to potentially covered claims under the policy. *Held*: The trial court correctly held that Arrowood's duty to defend arises from a "104(e) demand" issued by the EPA to ODOT pursuant to section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC §§ 9601 - 9628 (CERCLA), requesting information regarding alleged releases of hazardous substances within the investigation area, between 1937 and the present, by ODOT and its affiliated commissions and divisions, together with a General Notice Letter (GNL) sent by the EPA to ODOT, stating that the EPA "believes that the State of Oregon, by and through the Department of Transportation may be a PRP [potentially responsible party] with respect to this Site." The trial court further correctly held that, under Oregon's "complete defense" rule, Arrowood may not apportion its duty to defend to those claims that Arrowood are covered by the policy but must defend ODOT against the entire action.

Affirmed.

Leslie M. Roberts, Judge.

Thomas M. Christ argued the cause for appellant. Also on the briefs were Sussman Shank LLP; Nicholas L. Dazer and Nicholas Dazer P.C.; and Alex E. Potente and Clyde & Co.

Michael E. Farnell argued the cause for respondent. Also on the brief was Denise G. Fjordbeck, Assistant Attorney General.

Elizabeth Riegel and Crowell & Moring LLP filed the brief *amicus curiae* for American Property Casualty Insurance Association.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

The Oregon Department of Transportation (ODOT) brought this action against Arrowood Indemnity Company (Arrowood), an insurance company, seeking to establish Arrowood's duty to pay ODOT's defense costs in litigation by the Environmental Protection Agency (EPA) relating to the cleanup of environmental contamination at the Portland Harbor Superfund site. The asserted duty to defend is based on an automobile liability insurance policy that Arrowood's predecessor, Royal Globe Insurance Company, issued to ODOT's predecessor, the Oregon Transportation Commission, for a coverage period from 1978 to 1981. Arrowood responded that it was not required to defend ODOT or that its required contribution to defense costs under the policy are negligible.

On the parties' cross-motions for summary judgment, the trial court entered a limited judgment for ODOT under ORCP 67 B on ODOT's fifth claim for relief, which sought a declaratory ruling. The court determined that Arrowood has a duty to defend ODOT and to pay ODOT's defense costs against all Portland Harbor Superfund site "claims," and that Arrowood may not allocate its obligation to pay defense costs to those claims deemed to be covered by the policy. The limited judgment states that it does not address, and the parties have reserved, "all of their respective rights and defenses as to the reasonableness and necessity of ODOT's claimed defense costs."

Arrowood appeals, asserting in its first assignment of error that the trial court erred in granting ODOT's motion for summary judgment and in denying Arrowood's motion, determining that Arrowood has a duty to defend ODOT. In its second assignment, Arrowood asserts that the trial court erred in rejecting its contention that it is entitled to apportion its duty to defend to potentially covered claims under the policy.[1] We conclude that the trial court did not err and therefore affirm the limited judgment.

The former Oregon Transportation Commission (Commission), now ODOT, owned approximately 242 acres

---

[1] ODOT filed but has withdrawn a cross-appeal.

along the Willamette River, including Block 78, which was a half-acre parcel that the Commission leased to Northwest Copper Works, Inc., for use as a parking lot. Arrowood's predecessor had issued an insurance policy to Northwest Copper Works, Inc., that provided coverage for damages caused by contamination from automobiles on Block 78, during the coverage period March 17, 1978 to March 17, 1981. The policy provided, in relevant part:

> "The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of
>
> "C.   bodily injury or
>
> "D.   property damage
>
> "to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and *the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage*, even if any of the allegations of the suit are groundless, false, or fraudulent[.]"

(Emphasis added.) The italicized text of the quoted policy refers to Arrowood's duty to defend the insured—to which this appeal pertains, as distinct from its duty to indemnify the insured. By endorsement, the Commission was an insured under the policy with respect to Block 78, and it is undisputed that ODOT, as the Commission's successor, is an insured under the policy. The policy defined "property damage" as physical injury to tangible property "which occurs during the policy period."

In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC §§ 9601 - 9628 (CERCLA), which establishes the retroactive joint and several strict liability for environmental cleanup of past and current landowners or operators of properties or facilities from which hazardous substances have been released or disposed into the environment. CERCLA required the creation of a National Priorities List. *See U.S. v. Asarco Inc.*, 214 F3d 1104, 1105-06 (9th Cir 2000) (The President is "to compile a list identifying top priorities

among the nation's known hazardous waste sites. Sites on this list, the National Priorities List, are considered the leading candidates for Superfund-financed cleanup." (Citing 42 USC § 9605(a)(8)(B).)).

In December 2000, the EPA listed a section of the lower Willamette River on the National Priorities List as a federal Superfund site. The site includes an investigation area, which is an area designated by the EPA in conducting a search for parties potentially responsible for cleanup of the site under CERCLA.

In 2008, the EPA issued to ODOT, and ODOT responded to, a "104(e) demand," pursuant to section 104(e) of CERCLA, for information regarding alleged releases of hazardous substances within the investigation area, between 1937 and the present, by ODOT and its affiliated commissions and divisions. The 104(e) demand directed ODOT to:

> "[i]dentify each and every Property that Respondent currently owns, leases, operates on, or otherwise is affiliated [with] or historically has owned, leased, operated on, or otherwise been affiliated with within the Investigation Area during the period of investigation (1937 - Present). Please note this question includes state roads, state rights of way or easements, and state bridges. Please note that this question includes any aquatic lands owned or leased by Respondent."

In 2011, the EPA issued a General Notice Letter (GNL) to ODOT, stating that the EPA "believes that the State of Oregon, by and through the Department of Transportation may be a PRP [potentially responsible party] with respect to this Site." The GNL stated that a release of hazardous substances had occurred at "the site," and that the state may be liable for those releases as an owner or operator of property at the site. The GNL directed the state to, among other things, take action and to "give these matters your immediate attention."

ODOT tendered the GNL to Arrowood, requesting defense of its potential liability for the environmental cleanup. Arrowood declined to defend ODOT in any litigation relating to the cleanup and also declined coverage.

ODOT brought this proceeding, seeking in its fifth claim a declaration that Arrowood has a duty to defend ODOT's potential liability for cleanup of the Portland Harbor Superfund site. As noted, on the parties' cross-motions for summary judgment, the trial court issued a limited judgment declaring that Arrowood does have a duty to defend, must defend ODOT with respect to the entire litigation, and may not apportion defense costs to those claims that Arrowood determines are subject to defense under the policy.

On appeal, Arrowood argues in its first assignment of error that the trial court erred in denying Arrowood's motion for summary judgment and in granting ODOT's motion for partial summary judgment as to the duty to defend. In reviewing the trial court's ruling on cross-motions for summary judgment, "we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." *Providence Health Plan v. Allen*, 299 Or App 128, 135, 449 P3d 504 (2019), *rev den*, 366 Or 257 (2020). There is "[n]o genuine issue as to a material fact" when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. The issues presented on appeal are all legal; thus, we review the trial court's rulings for legal error.

Arrowood's argument focuses exclusively on the GNL, contending that there is no duty to defend, because the GNL does not constitute a complaint. In support of its motion for summary judgment, Arrowood wrote:

> "Under Oregon law, with no complaint, the EPA's 'General Notice' and 104(e) letters are considered 'suits' within the meaning of a liability policy, and they and the policy govern the determination of whether an insurer has a duty to defend."

To the extent that Arrowood now argues in its first assignment that the trial court erred because the GNL does not constitute a complaint or a "suit" within the meaning of the policy, Arrowood conceded that point below, and we hold Arrowood to its concession and conclude for that reason that Arrowood has failed to preserve error on that issue or has

invited any error in the trial court. We therefore decline to address the contention on appeal. *See Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F3d 923 (9th Cir 2013) (holding that a GNL letter and letter under section 104(e) of CERCLA, issued by the EPA, requiring responses to questions that necessarily established CERCLA liability, identifying the recipient as a potentially responsible party, and stating that the EPA believed it was responsible for hazardous substances and intended to pursue compensation, were "suits" under Oregon law).

We turn to Arrowood's further contention that the trial court erred in determining that there was a duty to defend. Arrowood acknowledges the familiar "four-corners" rule, under which a duty to defend depends on whether the complaint and the policy allege facts that would, if proved, impose liability covered by the policy. *West Hills Development Co. v. Chartis Claims*, 360 Or 650, 653, 385 P3d 1053 (2016) (describing rule). Under the rule, the allegations of the complaint are compared with the insurance policy's terms. *Marleau v. Truck Insurance Exchange*, 333 Or 82, 89, 37 P3d 148 (2001). If the allegations assert a claim covered by the policy, then the insurer has a duty to defend. *West Hills Development Co.*, 360 Or at 653. If the allegations do not assert a claim covered by the policy, then the insurer has no duty to defend. *Id.* By limiting the analysis to the complaint and the policy, the four-corners (or eight-corners) rule generally prevents consideration of extrinsic evidence. *Id.*

Arrowood thus acknowledges that there is a duty to defend if a "complaint" and the policy together create the potential for covered damages. Further, Arrowood acknowledges that there is a duty to defend if the complaint alleges facts that bring the conduct within the policy, even if the complaint also alleged facts that are not covered or that are excluded from coverage. *See Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 506, 460 P2d 342 (1969) (the insurer has a duty to defend if the complaint includes an allegation falling within policy coverage, even if it includes allegations outside of coverage). But Arrowood argues that the GNL and the 104(e) demand do not trigger that duty, because they

do not specifically mention Block 78, the only insured location, and indeed reference a completely different location. Arrowood further asserts that the documents are vague, do not contain any facts about the nature of the possible contamination released from ODOT's property, and, apart from speculation, do not include any coverage-triggering facts.[2]

ODOT responds that the standard is more nuanced than whether the EPA documents contain specific facts demonstrating covered liability. ODOT points out that an insured does not have to prove that there are covered damages to be entitled to a defense. *Ledford v. Gutoski*, 319 Or 397, 403, 877 P2d 80 (1994) ("The duty to indemnify is independent of the duty to defend."). Rather, the insurer owes a duty to defend if the claimant can recover against the insured under the allegations of the complaint "upon any basis for which the insurer affords coverage." *Nielsen v. St. Paul Companies*, 283 Or 277, 280, 583 P2d 545 (1978). Further, ODOT points out that any ambiguity in the complaint with respect to whether the allegations could be within coverage is resolved in favor of the insured. *Blohm et al v. Glens Falls Ins. Co.*, 231 Or 410, 416, 373 P2d 412 (1962). Thus, citing *Minnis v. Oregon Mutual Ins. Co.*, 162 Or App 198, 207, 986 P2d 77 (1999), *rev'd in part on other grounds*, 334 Or 191, 48 P3d 137 (2002) (examining whether the allegations in the complaint would permit a jury to find that plaintiff met the claim in question), ODOT asserts that, even if a complaint is unclear or devoid of coverage-related facts, there is a duty to defend if the complaint's allegations would permit the presentation of evidence that would establish the uncertain or missing coverage fact.

We agree with ODOT's formulation of the controlling analysis. Contrary to Arrowood's argument, the GNL and the 104(e) demand did not need to specifically reference Block 78 in order to trigger Arrowood's duty to defend. As the Supreme Court has recognized, in the "real world," "a complaint may not definitively allege the facts that ultimately will determine whether a claim is covered by the policy." *West Hills Development Co.*, 360 Or at 660. In

---

[2] In its opening brief, Arrowood addressed its argument only to the GNL. In its reply brief, Arrowood also addressed its argument to the 104(e) demand.

the face of ambiguity or lack of clarity, a complaint should be interpreted in favor of the insured and require a duty to defend if "the court can reasonably interpret the allegations to include an incident or injury that falls within the coverage of the policy." *Id.* at 667 (quoting *Bresee Homes, Inc. v. Farmers Ins. Exchange*, 353 Or 112, 117, 293 P3d 1036 (2012)). Here, as ODOT asserts, Arrowood's duty to defend arises because the GNL and the 104(e) demand together would permit proof that contaminants running off of Block 78, for which Arrowood provided coverage, caused damage.

Citing *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or App 468, 240 P3d 67 (2010), *rev den*, 349 Or 602 (2011), Arrowood argues that, in the face of ambiguity or the absence of coverage-triggering facts in the GNL, it was incumbent on ODOT to present extrinsic evidence in support of the contention that the EPA has raised claims under the policy. In *Fred Shearer & Sons, Inc.*, we concluded that extrinsic evidence *could* be admitted to show that a person defending against a claim was in fact an insured under a policy and entitled to a defense by the insurance company. In that case, the "additional insured" portion of the policy stated that it applied to "'all vendors'" of a product "'in the regular course of the vendor's business.'" *Id.* at 472. The complaint against the defending party did not allege that the defendant was a vendor of the product in the regular course of business. We acknowledged application of the "four corners" rule generally:

> "When the question is whether the insured is being held liable for conduct that falls within the scope of a policy, it makes sense to look exclusively to the underlying complaint."

*Id.* at 476. However, there was no dispute that, as to the circumstances alleged in the complaint, the defending party was indeed a vendor in the regular course of business, thus an insured. *Id.* at 474, 478 n 9. As limited to that question, we held that it would be inappropriate to disallow the use of extrinsic evidence, outside of the "four corners" of the policy and the complaint, to establish the facts relevant to whether the defending person was an insured. *Id.* at 485.

Arrowood argues that, in view of *Fred Shearer & Sons, Inc.*, in the face of an ambiguous complaint, the insured may, indeed *must*, produce coverage-triggering facts that would give rise to an obligation to defend. Arrowood notes that, in *West Hills Development Co.*, the Supreme Court referred to *Fred Shearer & Sons, Inc.*, and did not overrule it, allowing the case's holding to stand.

We reject Arrowood's suggestion that *Fred Shearer & Sons, Inc.* supports a general rule that there is an obligation on the part of the insured to present evidence of coverage, or that the Supreme Court has somehow let such a rule stand. As noted, *Fred Shearer & Sons, Inc.* limited its holding to the unique question whether the defending party was an insured, in which the evidence was undisputed that the defending party was an insured under the policy in the first place—it did not address whether the allegations fell within the scope of coverage. Therefore, we explicitly held that the four-corners rule "is justified" when the question is "whether the insured is being held liable for conduct that falls within the scope of a policy." *Id.* at 476. Further, in *Bresee Homes*, 353 Or at 123, the Supreme Court has explicitly rejected Arrowood's contention, holding that an insured has "no burden to come forth with facts beyond those alleged" in the complaint. *Id.*

We further reject Arrowood's suggestion that the use of extrinsic evidence as to facts of coverage might be an open question, because the Supreme Court did not overturn *Fred Shearer & Sons, Inc.* in its opinion in *West Hills Development Co.* In that case, the trial court had referred to extrinsic evidence to determine that the alleged damages had been caused by an insured. Because the defending party was also an insured under the policy, the trial court concluded that the insurer was required to defend. 306 Or at 659. We affirmed the trial court's ruling, citing our opinion in *West Hills Development Co. v. Chartis Claims*, 273 Or App 155, 359 P3d 339 (2015).

On review, the Supreme Court affirmed our opinion but on different reasoning. The court explained that it did not need to address the correctness of the holding in *Fred Shearer & Sons, Inc.* that extrinsic evidence could be

considered for purposes of determining who was an insured, because the case before it did not involve the question whether the plaintiff was an insured—it was undisputed that the plaintiff was a named insured. *West Hills Development Co.*, 360 Or at 666. The court further concluded that, because the complaint's allegations, reasonably interpreted, could result in the insured being held liable for damages covered by the policy, the insurer had a duty to defend. *Id.*

As in *West Hills Development Co.*, the issue addressed in *Fred Shearer & Sons, Inc.*—whether the defending party was an insured under the policy—is not presented here. ODOT is named as an insured. For the purpose of determining the duty to defend, the question is whether, despite any ambiguity, the EPA 104(e) demand and GNL can reasonably be interpreted to allow proof at trial of liability covered by the policy. *See West Hills Development Co.*, 360 Or at 666. We conclude that the EPA's allegations of releases from state-owned land at the site, which implicitly includes Block 78, fall squarely within that standard and give rise to a duty to defend.[3] We therefore reject Arrowood's first assignment of error.

Arrowood's second assignment of error relates to the scope of Arrowood's duty to defend, and whether the trial court erred in limiting discovery on that question.[4] Below, Arrowood sought to limit its duty to defend to those aspects of the EPA's "claim" that were determined to be within the scope of the policy's coverage. Relying on *Timberline Equip. Co. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 645, 576 P2d 1244 (1978), ODOT responded that under the "complete defense" rule, if there is an obligation under a policy to defend against one allegation of a complaint, the insurer has a duty to defend against the entire action. The trial court agreed with ODOT and determined that Arrowood is responsible for all of ODOT's defense costs in the Portland

---

[3] The 104(e) demand alleged property damage in the form of contamination at the site and that the state, through ODOT, is among those potentially liable for the contamination. The GNL stated that a release of hazardous substances, pollutants, or contaminants occurred at the site and that the state may be liable for those releases as an owner or operator of property at the site.

[4] Although Arrowood challenges to the trial court's ruling allowing ODOT's motion to stay discovery, it does not raise a separate argument addressing that contention.

Harbor Superfund litigation. Thus, the trial court rejected Arrowood's contention that it is entitled to apportion its duty to defend to those "claims" that are determined to be covered by the policy.

Citing federal and California case law as persuasive authority, *see, e.g.*, *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F2d 1212 (6th Cir 1980), *aff'd on reh'g*, 657 F2d 814 (6th Cir 1981); *Buss v. Superior Court*, 16 Cal 4th 35, 65 Cal Rptr 2d 366, 939 P2d 766 (1997), Arrowood asserts in its second assignment that its obligation, if any, is limited to the cost of defending ODOT against potential insured liability for pollution from Block 78 during the coverage period, the only risk insured:

> "To require the insurer to defend the uncovered claim when joined gratuitously to the covered claim would give the insured a windfall at the insurer's expense. The insured would be unjustly enriched, and the insurer unjustly burdened. The better holding is to require the insurer to defend the [covered] claim only[.]"

ODOT responds that the cited cases are distinguishable factually and, further, that the "complete defense" rule of *Timberline Equip. Co.* is controlling in Oregon and requires that if Arrowood has an obligation to defend ODOT on any of the EPA allegations, it has a duty to defend ODOT in the entire litigation. That is indeed the rule that we have drawn from *Timberline Equip. Co. See Klamath Pacific Corp. v. Reliance Ins. Co.*, 151 Or App 405, 413, 950 P2d 909 (1997), *modified on recons*, 152 Or App 738, 955 P2d 340 (1998) ("If some of the allegations pertain to conduct that could be covered by the insurance policy, and some that could not, the insurer must defend the entire action.").

Arrowood asserts alternatively that the "complete defense" rule is properly limited to cases involving multiple claims arising from a single occurrence—seeking the same damages for the same injury from the same covered event—and should not apply to require defense of "permissively joined" claims not within policy coverage for separate damages for separate injuries from separate occurrences. Arrowood argues that *Timberline Equip. Co.* and the cases that have followed it have been single-occurrence cases, in

which the plaintiff asserted both covered and uncovered damages under alternative theories of liability but that did not involve claims like those relating to the Portland Harbor Superfund site cleanup, in which damages are claimed for separate injuries from separate occurrences, and where defense costs can be apportioned between insured and uninsured claims.

The flaw in Arrowood's reasoning is that the EPA proceeding does not allege separate counts or permissively joined independent claims with apportionable defense costs. Under the EPA's single theory of joint and several liability under 42 USC sections 9606(a) and 9607(a) ("the owner and operator of a vessel or a facility *** shall be liable for *** all costs of removal or remedial action incurred by the United States Government ***"), ODOT is potentially liable for all damages for the environmental cleanup from all causes during the entire exposure period. That interpretation is consistent with CERCLA, which "establishes a retroactive strict liability regime that imposes joint and several liability upon past and current landowners or operators of properties or facilities from which hazardous substances have been released or disposed into the environment." *Anderson Bros.*, 729 F3d at 926. Because CERCLA liability is joint and several, "a responsible party may be held liable for the entire cost of cleanup even where other parties contributed to the contamination." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F3d 946, 957 (9th Cir 2013) (internal citations omitted). That exposes anyone identified as a PRP, such as the state, to liability for the entire cleanup. Thus, even assuming the correctness of Arrowood's attempted narrowing of *Timberline Equip. Co.*, the distinction is not apt.[5]

We further agree with ODOT that the policy itself supports the trial court's ruling. It requires that Arrowood

---

[5] We also note that, contrary to Arrowood's suggestions, "apportionment" in Oregon is generally between and among insurers, not between an insurer and its insured. *Cascade Corp. v. American Home Assurance Co.*, 206 Or App 1, 12, 135 P3d 450 (2006) ("[*Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 341 P2d 110 (1959)], provides a mechanism for insurers to determine among themselves how much each must contribute to the insured's loss, but it does not affect their duty to make the insured whole up to the limits of their policies.").

> "defend any suit against the insured seeking damages on account of [property damage to which the insurance applies,] even if any of the allegations of the suit are groundless, false, or fraudulent[.]"

The policy requires a defense of "any suit" seeking damages and does not limit the duty to defend to claims for covered damages. Because the EPA alleges damages on account of property damage reasonably subject to coverage under the policy, the trial court correctly held that Arrowood has a duty to defend the entire action.

Affirmed.